## Riddle et al. v. Delaware County, Appellant.

156   643
39SC²609
c39SC²610

*Bridges—County commissioners—Discretion.*

County commissioners cannot be controlled by a private citizen in the
exercise of their discretion in building a county bridge, either as to the
size of the bridge, its plan, or the location of its piers and abutments:
Delaware County's Ap., 119 Pa. 159.

*Injury to water power of mill—Evidence.*

In an action by a mill owner against a county to recover damages for
an injury to his water power caused by the construction of a county bridge,
it is not improper to ask a witness whether the bridge was located in the
best practical way to pass the waters in time of flood, where the general
scope of the testimony of the witness was that in time of freshets the

abutment of the bridge seriously obstructed the ventage of the water, and thus interfered with plaintiff's water rights.

In such a case it is not improper for the court to charge that if, under the circumstances, a larger span would have obviated the damming up and flooding, plaintiffs were entitled to recover for the injuries sustained.

*Notice of character of bridge—Estoppel.*

Plaintiffs were not estopped by the fact that before the erection of the bridge they were informed by the commissioners of its character and manner of erection, and permitted the commissioners to commence and complete the bridge without objection.

*Contributory negligence—Erection of milldam.*

Where the milldam and other structures injured by the construction of the bridge were all erected prior to the construction of the bridge, the general rule as to contributory negligence cannot be invoked by the county to defeat a recovery.

Argued Feb. 8, 1893. Appeal, No. 11, Jan T., 1893, by defendant, from judgment of C. P. Chester Co., Jan. T., 1892, No. 9, on verdict for plaintiffs, Lydia C. Riddle and Samuel D. Riddle, executors, etc., of Samuel Riddle, deceased. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for injury to water power. Before HEMPHILL, J.

The case was originally brought in C. P. Delaware county, Dec. T., 1889, No. 88. On change of venue, the case was transferred to Chester county.

At the trial, it appeared that in 1884 the county commissioners of Delaware county rebuilt a bridge over Chester creek at a point in close proximity to the mills belonging to the estate of Samuel Riddle, deceased. The dam from which the water power for the mills was supplied was about twelve hundred feet above the bridge. The milldam and the mills had all been built before the reconstruction of the bridge was commenced. The evidence showed that in building the new bridge about forty-eight feet of solid stone masonary had been built in the creek-bed, which before had been open for the free passage of the waters of the creek.

Henry Riddle, a witness for plaintiff, who had had some twenty years' experience in the manufacturing business, testified that he had known of no instance of depreciation in mill property caused by flooding. He was objected to as a witness as to amount of depreciation, but admitted. [3]

David Evans, a witness for plaintiff, testified in substance that in time of freshets the abutments of the new bridge seriously obstructed the ventage of the water, and thus interfered with plaintiff's water power.

The witness was then asked this question : " Q. From an examination of the ground and the course of the stream and the current, can you say whether the bridge is located in the best practical way to pass the waters in time of flood?" Objected to, objection overruled and exception. [4]

" A. It is not. The reason I say that is from the configuration and topography of the ground. The waters in time of flood pass from the Aston side under the railroad bridge and thence towards the Middletown side, striking about the point of this present Middletown abutment and at the point where the largest volume of water should strike, is the point that should be open for the ventage of the waters."

The court charged in part as follows :

" It seems that in 1760, under proceedings in the court of quarter sessions of Chester county, of which Delaware county then formed a part, a public road was laid out and opened which crossed Chester creek where the present bridge is now located. Prior to 1843, a wooden sleeper bridge spanned the creek at this point, and formed a part of the roadway laid out and opened in 1760. In that year (1843), an extraordinary freshet washed that bridge away and injured the stone abutment on the Aston side. In the same year, or in 1844, the bridge was replaced by another wooden structure, which, however, was lengthened about 60 feet on the Aston side, and which rested on two stone abutments and four stone piers, leaving an open space between the abutments of 140 feet through which the waters of the creek might flow unobstructed, save only by the stone supporting piers, some rocks or boulders, and some bushes and trees that had grown up in the bed of the stream. This bridge falling into decay was replaced by the present iron bridge in 1884. It was erected upon the same ground as the bridge removed had occupied, and upon the roadway as laid out in 1790. The Middletown abutment, built of solid masonry, was, however, extended out into the bed of the stream 60 feet, leaving a space between the two abutments of 80 feet, which was spanned by

an iron superstructure from 10 to 11 feet above the water beneath, at its ordinary stages. In 1878 or 1879 the breast of the McCready dam, which stood about 50 feet above the bridge and opposite to the lower end of mill No. 2, and which had been purchased by Mr. Riddle, was removed. In 1881, Mr. Riddle erected the brick mill, about two thirds of which was located in the bed of the McCready dam and the stream below. About the same time Mr. Riddle built a stone wall five feet thick and averaging in height about six feet, from the waste way of the head-race down to the upper corner, nearest the creek, of the brick mill. This wall was all built in what was formerly the bed of the McCready dam, and was filled in behind so as to increase the yard room of the mills and protect them from flooding. In 1884, Mr. Riddle placed a turbine water wheel between the brick mill and the blacksmith shop, conducting the water by a large iron flume from the head-race just below mill No. 2, to the wheel, and thence by a tail-race dug between the first pier and the Middletown abutment, of the old bridge, down to the stream below the bridge.

" Now, the plaintiffs allege that by reason of the manner in which this bridge was constructed, namely, by the extension of the Middletown abutment 60 feet into the bed of the stream, and curtailing of the space between the abutments from 140 to 80 feet, the water in the usual spring and fall freshets is dammed back and floods their mills and adjacent yard, causing them great injury and inconvenience and greatly depreciating the market value of their mill property. If these allegations be true, the county must answer in damages for the loss which it has entailed upon the plaintiffs; for it was the duty of the county, in the construction of its bridge, to leave an opening or openings sufficiently large to afford passage for all the water that might reasonably be expected to flow through such a stream as Chester creek; taking into consideration the character and topography of the country through which it flows, the extent of country it drains, the size of the stream, the height of its banks and the usual freshets to which it was known or might reasonably be expected to be subject. The county, however, was not required to anticipate or provide against extraordinary or unusual freshets, nor against every possible or remote contingency, such as cloud bursts or the breaking of dams above.

They are visitations of providence, and the destruction they bring must be borne by those on whom they happen to fall. It is not questioned but that the span of 80 feet is ample, and more than ample, for the free passage of all the water of this stream in its ordinary stages, but the important question for your serious consideration and determination is—is it sufficient to vent the stream when swollen by the unusual spring and fall freshets to which the creek is subject, or does it, in such freshets, by reason of its extended Middletown abutment and contracted span, dam up the water to such a height as to flood the plaintiff's mills and property? The burden is on the plaintiffs to satisfy you that the injury they complain of was caused by the manner in which the bridge was constructed—being insufficient to vent the ordinary and usual freshets to which the stream is subject."

After reviewing the evidence, the court continued:

" If the same result would have been produced by the erections referred to had the old span of 140 feet with piers, etc., still existed, then the plaintiffs cannot recover in this action, for the reason that the injury complained of was not caused by the erection of the new bridge.   [ If, however, a larger span would, under the circumstances, have obviated the damming up and flooding, then the plaintiffs are entitled to recover for the injury sustained, for Mr. Riddle had a perfect right to raise his dam breast and erect his wall and mill where he did, and as all of it was completed before the bridge was commenced it was the duty of the commissioners in the building of the bridge to provide for the then existing conditions of and along the stream.] " [11]

Plaintiffs' points were among others as follows.

" 6. The right to flow of running water without alteration being common to all those through whose land it flows, any unauthorized interference with the free flowing of the water in its natural course to the prejudice of such landowner is the subject of an action of damages. *Answer:* As a correct enunciation of a legal principle, this point is affirmed." [12]

" 9. If the defendant has so constructed their bridge that the abutments and wing-walls have diminished the space for the passage of the waters of the creek, and the effect of such construction is, when there is a great flow of water caused by

rain or the breaking up of winter such as the stream is liable to, to obstruct the free and accustomed flow of the water and of ice and to set the same back on the plaintiff's mills, and thereby for a time to prevent the use of any of the mills and to occasion other damage, the plaintiff is entitled to recover. *Answer :* This point has in effect been passed upon in my general charge, and I need only repeat that if the commissioners in the construction of the bridge have failed or neglected to provide for the free flow of the waters of the stream in times of the usual or ordinary freshets to which it is subject and damage has resulted to the plaintiffs by reason of such failure or neglect, the defendant is liable in damages for the injury done." [13]

" 11. Samuel Riddle, being the owner of the land, had the right to build the brick mill where he did, if the building thereof did not materially affect the usual flow of the stream to the damage of others having rights thereon, and his so building this mill gave no rights to the defendant to obstruct the free flow of water in its natural course, either in ordinary low stages or in ordinary floods or freshets." Affirmed. [14]

Defendant submitted among others the following points :

" 3. That if, in the opinion of the commissioners of Delaware county, the bridge was of sufficient capacity to vent the waters of Chester creek, the defendant is not liable for the damage to the property of the plaintiff by reason of any mistake of the commissioners in not making the bridge of greater capacity." Refused. [15]

" 4. In order that the plaintiffs may recover in this action they must show negligence on the part of the commissioners in the erection and construction of the bridge in question, and if the commissioners having in contemplation the erection of this bridge went upon the premises, viewed the place of erection, informed themselves as to the character of the stream, and were governed by the advice of a skilled engineer of established reputation in the erection thereof, and availed themselves of all means that men of ordinary prudence erecting such a structure would have made use of, any presumption of negligence arising by reason of the effect of the bridge upon the water is rebutted, and, without positive evidence of negligence, the verdict must be for the defendant.  *Answer :* This point, as stated.

is disaffirmed. There is no evidence that the commissioners informed themselves as to the character of the stream, or that they were governed by the advice of a skilled engineer of established reputation in the erection of this bridge." [16]

" 5. If the jury believe that the damages to the plaintiffs' premises are limited to flooding occasioned by the backing of the water in an increased volume at flood-time, the defendant is not liable in this action and the verdict must be for the defendant. *Answer:* This point we must qualify by adding, provided that it was not caused by the manner in which the bridge was constructed, and the flood was not an unusual or extraordinary one. As thus qualified, we affirm the point." [17]

" 6. That if the jury believe that Samuel Riddle, before the erection of this bridge, was informed by the commissioners so fully of the character and the manner of erection as to render the effect thereof upon the stream apparent to him, and being so informed permitted them to commence and carry on the erection of the same without objection, the plaintiffs are estopped by his action, and the verdict should be for the defendant. *Answer:* There is no evidence to sustain this point and it is disaffirmed." [18]

" 8. That if the jury believe from the evidence that Samuel Riddle, by his acts, in backing the water by the dam below, by the erection of a wall on the Middletown side, the erection of the brick mill, or by any other acts contributed to the injury done, there can be no recovery in this case, and the verdict should be for the defendant. *Answer:* This point is disaffirmed, for the reason that there is no evidence that Samuel Riddle did anything to contribute to the injury after the erection of the bridge. These structures were all put up and the dam breast raised prior to the construction of the bridge." [19]

" 9. The burden is upon the plaintiff to satisfy the jury that the bridge is the cause of the injury complained of, and the amount of damages occasioned thereby, and if the jury are unable to separate the damages attributable to the acts of Mr. Riddle, and those occasioned by the erection of the bridge, there can be no recovery in this action, and the verdict must be for the defendant. *Answer:* The first portion of this point is affirmed, and that is as follows: 'The burden is upon the plaintiff to satisfy the jury that the bridge is the cause of the

injury complained of, and the amount of damages occasioned thereby.' The latter portion we disaffirm, because there is no evidence that Samuel Riddle did anything to contribute to the injury since the erection of the bridge." [20]

" 10. Under the pleadings and the evidence in this case, the verdict of the jury must be for the defendant. *Answer :* This point we disaffirm. The case is one for the jury, under the evidence, and to the jury we shall submit it." [21]

Verdict and judgment for plaintiffs for $14,000. Defendant appealed.

*Errors assigned* were among others (3, 4) rulings on evidence; (11–21) instructions, quoting instructions and evidence, but not bills of exceptions.

*John J. Pinkerton* and *Edward Hall, S. D. Ramsey*, with them, for appellant, cited: Delaware County's Ap., 119 Pa. 159; Shieb v. Collier Township, 11 Atl. 366 ; Carr v. Northern Liberties, 35 Pa. 324; Collins v. Phila., 93 Pa. 272; Chambers v. South Chester, 140 Pa. 510 ; Allentown v. Kramer, 73 Pa. 409; Fair v. Phila., 88 Pa. 309; Mills v. Brooklyn, 32 N. Y. 489; Jutte v. Bridge Co., 146 Pa. 400 ; Smith v. Mayor of New York, 66 N. Y. 295 ; Grant v. Erie, 69 Pa. 420; Child v. Boston, 4 Allen, 41 ; Mayor v. Furze, 3 Hill, 612; Clarke v. Birmingham Bridge Co., 41 Pa. 147; Gearing v. Lacher, 146 Pa. 397 ; Steinbrunner v. Ry. Co., 146 Pa. 504.

*George E. Darlington* and *V. Gilpin Robinson, Robert S. Waddell* with them, for appellees, cited: Chester Co. v. Brower, 117 Pa. 654; Carr v. Northern Liberties, 35 Pa. 324; Allentown v. Kramer, 73 Pa. 409; Fair v. Phila., 88 Pa. 309; Collins v. Phila., 93 Pa. 272; Del. Co. Ap., 119 Pa. 159; Pa. R. R. v. Duncan, 111 Pa. 352; Perry v. Worcester, 6 Gray, 544.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 2, 1893:

Two suits were brought against the county defendant to recover damages for injury done to a certain mill property, formerly owned by Samuel Riddle, and, after his decease, by his two sons Samuel and Leander. Said injury is alleged to have been caused by the erection of a county bridge over Chester

creek, whereby the channel of that stream was obstructed and the waters thereof so backed up, during freshets, that the mills, and surrounding lands appurtenant thereto, were flooded and said mill property greatly damaged and depreciated in value. The first of these suits was brought by the executors of Samuel Riddle, who died February 19, 1888, and the second by his said sons, devisees under his will. The court held that no action could be maintained by said devisees, because the injury, if any, having been done in the lifetime of their devisor, was permanent and the consequent depreciation of value, if any, had taken place before they acquired title. A verdict for the defendant in that case was accordingly directed, and in the other, now before us on this appeal, the entire subject of damages was adjudicated.

The facts, necessary to a proper understanding of the case, are so fully and accurately presented, in the learned judge's charge and answers to points, that extended reference to them is now unnecessary. The subjects of complaint in the first ten specifications of error, are to admission and rejection of testimony. The remaining eleven specifications are to alleged errors in the learned judge's charge and answers to points submitted by counsel.

When the appeal of the present defendant from decree enjoining the erection of said new bridge, etc., was before us, Mr. Chief Justice PAXSON, in the opinion reversing said decree, said : " It needs no authority to show that the county commissioners cannot be controlled, in their discretion in building a county bridge, on the application of a private citizen. This cannot be done either in the size of the bridge, its plan, the location of its piers or abutments. The master finds that this bridge is located wholly on the old roadbed and within its lines. It does not touch the land of the complainant. If it causes injury to the latter by interfering with his water rights, he has his remedy by an action on the case : " Delaware County's Appeal, 119 Pa. 159. Recognizing that case as definitively settling the legal relation of the county to their testator, the executors brought this action on the case, and the trial proceeded for the recovery of damages, not for the wrongful or improper erection of the bridge, but for the injury sustained by reason of its interference with his water rights. Their

claim is based upon the settled principle that the measure of damages is the difference in value of the mill property before and after the erection of the bridge. With special reference to this, we have considered the first ten specifications, the last of which relates to the exclusion of defendant's offer to prove the matters therein stated, and the others to the admission of plaintiffs' several offers, and are not satisfied that there is any substantial error in either of them.

The only doubt we have, as to any of them, is in regard to the relevancy of the question recited in the fourth specification. At first sight, that would appear to be irrelevant, but when considered in connection with the general scope of Mr. Davis's testimony, including his answer to the question complained of, we think it is neither incompetent nor irrelevant. The substance of his testimony on that subject is that, in time of freshets, the abutment etc. of the bridge seriously obstructs the ventage of the water, and thus interferes with the plaintiffs' water rights.

In that portion of his charge recited in the eleventh specification, we think the learned judge rightly instructed the jury that if, under the circumstances, a larger span would have obviated the damming up and flooding, then the plaintiffs are entitled to recover, for the injuries sustained, because Mr. Riddle had a perfect right to raise his dam breast and erect his wall and mill where he did, and as it was all completed before the bridge was commenced it was the duty of the commissioners in building the bridge to provide for the then existing conditions.

There was no error in affirming plaintiffs' sixth and eleventh points, nor in the answer to their ninth point. In the latter the learned judge said: " If the commissioners in the construction of the bridge have failed or neglected to provide for the free flow of the waters of the stream in times of the usual or ordinary freshets to which it is subject, and damage has resulted to the plaintiffs by reason of such failure or neglect, the defendant is liable in damages for the injury done."

There was no error in refusing to affirm defendant's third point; nor in the court's answers to either its fourth, fifth or sixth points. The ground of estoppel set up in the last of these points is wholly untenable: Perry v. City of Worcester, 72 Mass. 544.

The defendant was not entitled to an affirmance of its eighth point, or to an unqualified affirmance of its ninth point. The case is not one in which the general rule as to contributory negligence can be invoked to defeat a recovery.

The case depended on questions of fact which were clearly for the jury, and we are not satisfied that, in submitting it to them, the learned judge committed any error, either of law or fact, of which the defendant has just reason to complain.

Judgment affirmed.