## John A. Craig v. Borough of Shippensburg, Appellant.

*Waters and water rights—Diversion of stream by borough—Rights of riparian owners.*

A borough has no right to divert a stream to the injury of lower riparian owners, for the purpose of supplying its inhabitants with water without making compensation to the persons injured.

*Diversion of waters—Measure of damages.*

Where the effect of damming a stream by a borough in order to supply its citizens with water, works deprivation to a lower riparian owner of the stream by causing said stream to dry up for several months in the year and by reason of affecting also a spring owned by such riparian owner, the court cannot instruct the jury that they can only find nominal damages, there being evidence of inconvenience and loss resulting from the drying up of the stream and spring and some evidence of connection between the spring and the stream.

*Waters and water rights—Spring—Natural percolation—Question for jury.*

The ordinary rule that a man is not responsible when in the natural use of his own land, he interferes with the natural percolation of water through his soil, thereby affecting a spring on another man's land, does not apply where the diversion of a stream is the gravamen of the action, and the destruction of the spring is the necessarily resulting injury to a lower riparian owner from such diversion of the stream. And where there is some testimony that would seem to indicate that irrespective of natural conditions the spring always becomes dry whenever the flow of the stream is shut off, and is at once supplied when the stream resumes its flow, a strong probability arises that there is some connection between the two, and the question of resulting damages and the relation of the spring and the stream is for the jury.

Argued March 17, 1898.   Appeal, No. 52, March T., 1898, by defendant, from judgment of C. P. Cumberland Co., on verdict for plaintiff.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.   Affirmed.   REEDER, J., dissents.

Trespass.   Before E. W. BIDDLE, P. J.

It appears from the evidence that the borough of Shippensburg, for the purpose of furnishing an additional water supply, appropriated a small mountain stream on the South Mountain by obtaining a lease for ninety-nine years, of an acre of land and constructed a small dam thereon and thence piping by gravity the water to the borough.   No proceedings in eminent domain were taken by the borough to appropriate the water.

The plaintiff is the owner of two farms on the borders of said borough through portions of which the channel of said stream ran, and at certain seasons of the year water flowed through the same.

There was evidence tending to show that since the erection of the dam, the stream became dry in certain months of the year, and that plaintiff was thereby put to loss in the matter of watering cattle, etc., and also that he was deprived of the use of a spring, which was fed by said stream, during the time when said stream went dry.   The question before the court and jury was the allegations that the plaintiff was no riparian owner and that if such, there was not sufficient evidence that the diversion by the borough occasioned loss to the plaintiff.

Verdict and judgment for plaintiff for $176.   Defendant appealed.

*Errors assigned* were (1) in refusing second point of defendant, which point is as follows: " 2. The evidence that the springs and flowing well on the farms of the plaintiff are supplied with water from the mountain stream upon which the dam of defendant is constructed, is too uncertain, indefinite and speculative to establish the fact that the alleged diversion by the defendant affects the flow of said springs and well, and no damages can be predicated or found by the jury for the diminished flow of said springs and well."   (2) In refusing fourth point of defendant, which point is as follows: " 4. The evidence

of special and actual damages to the plaintiff by the alleged diversion of the stream by the defendant is too uncertain, vague and indefinite, to sustain a verdict for such damages." (3) In admitting under objection the following offer of plaintiff : " It is now proposed to show by the witness on the stand that within ten feet of the bed of the stream, the diversion of which is complained of, he has a spring and spring house which was desirable, useful and profitable to him by reason of the domestic uses which he made of it ; that by reason of the damming up of the stream by the defendant, the supply of water which came down the stream has been cut off ; that this spring was fed in part at least, if not wholly, by percolations from this stream ; that by reason of the cutting off of the stream these percolations have ceased, and the spring has become dry for a greater portion of the year, and that he has been deprived of the use of it, thereby suffering damages of a pecuniary nature, and it is proposed to ask him how much those damages are, in connection with other alleged injuries suffered by him at the hands of the defendant."

*J. W. Wetzel,* with him *J. S. Omwake* and *Conrad Hambleton,* for appellant.—In Clark v. Railroad Company, 145 Pa. 438, 451, the Supreme Court says : " But, as long as the diversion of the water did not do them any actual injury, they had no claim for special damages. The company was, of course, at all times liable to an action in vindication of the plaintiff's right, but not for the recovery of actual damages until an actual injury was done." That is, the actual injury must be ttributable to the act of diversion.

The case of Collins v. Chartiers Valley Co., 131 Pa. 143, is a well-considered case and a full statement of the law bearing on the subject of the right in waters, — surface and subterranean.

Wheatley v. Baugh, 25 Pa. 528, seems to be regarded as having settled the law, that no one has a title or property right in percolations.

The spring is over five miles from the dam in the mountains, the point of diversion, — no connection was shown. There was therefore no evidence to submit to a jury that the spring in the spring house went dry and was dry for a longer period than prior to 1892, because of the diversion by the defendant.

Evidence of actual damages should be direct, certain and definite, so as to form a basis of calculation for a jury. Where it is vague, uncertain, indefinite, speculative and conjectural, it should not be submitted.

*Sadler & Sadler*, with them *G. E. Mills* and *E. J. McCune*, for appellee.—In Parker v. Boston and Maine Railroad, 57 Mass. 107, the well of the plaintiff had been rendered dry and useless by reason of an excavation made by a railroad, and in determining that the latter was liable for damages.

In Trowbridge v. Brookline, 144 Mass. 139, by the construction of a sewer a well was made dry which had been fed by percolations through the soil. The owner of the well was held to be entitled to recover damages.

OPINION BY RICE, P. J., July 29, 1898 :

It is conceded, and is too plain for argument, that the defendant borough had no right to divert the stream, to the injury of the lower riparian owners, for the purpose of supplying its inhabitants with water, without making or securing compensation to the persons injured : Haupt's Appeal, 125 Pa. 211 ; Lord v. Water Co., 135 Pa. 122 ; Clark v. R. R. Co., 145 Pa. 438 ; R. R. Co. v. Water Co., 182 Pa. 418 ; Glass Co. v. Water Co., 5 Pa. Superior Ct. 563. There was ample evidence to warrant the jury in finding that the flow of water over and through the plaintiff's land was sensibly diminished by reason of the erection of the defendant's dam. The question was submitted to them under instructions, to which no exception has been taken, and, therefore, their verdict is to be construed as establishing the fact. It follows that the defendant was liable to action in vindication of the plaintiff's right; but not for the recovery of substantial damages unless actual injury was done :. Clark v. R. R. Co., supra.

The case, as presented here, turns upon the question of the measure of damages.

The court was asked to instruct the jury, that the evidence was too vague, uncertain and indefinite to sustain a verdict for actual damages. The refusal so to charge is the subject of the second assignment of error. But there was evidence that the plaintiff used the stream for watering his stock, and that before

the dam was built the water flowed through his premises from
nine to twelve months in the year,— some years the stream
did not become dry at all,—whilst since it was built (in 1892)
it only flows five or six months in the year. Clearly, the dep-
rivation of the use of the stream for this purpose for a longer
period than formerly was a substantial injury which, even in
the absence of evidence of any other, would entitle the plain-
tiff to recover something more than nominal damages. We
need not dwell on this assignment; we have said enough to
show, that the defendant was not entitled to an affirmance of
the point.

The plaintiff offered to show, in addition, that within ten
feet of the bed of the stream he has a spring, over which was
erected a spring house, and which was useful and profitable to
him by reason of the domestic uses which he made of it; that
this spring was fed in part at least, if not wholly, by percola-
tions from the stream ; that by reason of the cutting off of the
stream these percolations ceased, and the spring became dry
for a greater portion of the year, in consequence of which he
suffered damage. The overruling of the objections to this
offer, and the refusal to charge that the evidence was insuffi-
cient to establish the facts recited in the offer and to warrant
the jury in taking the diminished flow of the spring into con-
sideration in estimating the plaintiff's damages, are the subjects
of the first and third assignments of error.

Wheatley v. Baugh, 25 Pa. 528, decided that where a spring
depends for its supply upon percolations through the land of
the owner above, and in the use of the land for mining or other
lawful purposes the spring is destroyed, such owner is not lia-
ble for the damages thus done, unless the injury was occasioned
by malice or negligence. Neither this case, nor any of those
which follow it touch the precise question raised here. They
relate to a lawful and nonnegligent use of his land by the
owner, whereby the water which would naturally percolate
through his soil and supply the spring or well of his neighbor,
is prevented from doing so. This is damnum absque injuria,
because to hold otherwise would deprive the owner of the land
from which the water percolated of the reasonable enjoyment
of his own property. "No man could dig a cellar, or a well,
or build a house on his own land, because these operations

necessarily interrupt the filtrations through the earth. Nor could he cut down the forest and clear his land for the purposes of husbandry, because the evaporation which would be caused by exposing the soil to the sun and air would inevitably diminish, to some extent, the supply of water which would otherwise filter through it. He could not even turn a furrow for agricultural purposes, because this would, partially, produce the same result." This being the reason of the rule, it needs no argument to show that it cannot be invoked by one who tortiously diverts a stream, and thus deprives a lower owner of the benefits incident to the enjoyment of his right to have it flow as it was wont by nature without material diminution or alteration. If in its natural state it irrigates his land or supplies his well or spring, the fact that these benefits depend on percolations through his soil does not place the act of the wrongdoer in depriving him of them beyond the pale of judicial recognition. The diversion of the stream is the gravamen of the action, and the destruction of the spring, if a necessarily resulting injury which might have been foreseen, goes to the measure of damages. This is not seriously disputed; indeed the counsel for the defendant candidly admitted on the argument that there might be a recovery of damages for the destruction of the spring if there was any satisfactory evidence that it was supplied by percolation from the stream, but very earnestly contended that there was no such evidence. It is said, that this is one of many cases growing out of the defendant's act, and we have examined the evidence with the care that the importance of the case, and the sincerity and earnestness of counsel in pressing the point, demanded. Certainly, the fact was not demonstrated on the trial, but we cannot say that there was no reliable evidence of it. Witnesses who had known the spring for many years testified that when the stream runs the spring runs, and when the stream is dry the spring dries up. If the drying up of the stream was caused by the weather and other natural conditions that might affect the spring as well, it might be said that the evidence established no more than a coincidence. But if the fact be, as some of the testimony would seem to indicate, that, irrespective of these natural conditions, the spring always becomes dry whenever the flow of water in the stream is shut off, and is at once

supplied when the stream resumes its flow, a strong probability arises that there is some connection between the two. This fact, taken in connection with the evidence as to the conformation of the ground, the porous nature of the adjacent soil, the frequent sinks in the bed and sides of the stream, to say nothing of the opinions of witnesses who had observed the action of the stream and the spring through a long period of years, made the question one for the jury. We are not required to say that we would have rendered the same verdict; it is sufficient to show, that the contention of the plaintiff was not so improbable, inherently, or so unsupported by evidence of a trustworthy nature as to warrant the court in refusing to submit the question to the jury.

Judgment affirmed.

REEDER, J., dissents.