## Beech *v.* Kuder.

*Waters and water rights—Riparian rights.*

Riparian proprietors are entitled, in the absence of grant, license or prescription, to have the stream which washes their lands flow as is wont by nature without material diminution or alteration.

*Equitable jurisdiction—Obstruction of stream.*

Where an obstruction is erected by a lower riparian owner without pretense or right thus to obstruct the stream, the upper riparian owner is not bound to await the slow process of successive actions of trespass but may in the first instance appeal to equity for relief.

*Estoppel—Equity—Balance of injury.*

A stream having been obstructed estoppel cannot be set up against the upper riparian owner either (1) because he took care of the water, after it had been turned back, upon his land, or (2) because he at one time said "he did not intend to go to the expense of a lawsuit over the matter" there being no evidence that this remark had been communicated to the defendants or that they had changed their situation in reliance upon it.

There are lacking under such circumstances, not only the essential elements of an estoppel but also the facts essential to the proper application of the equitable principles of the "balance of injury."

Argued April 23, 1900. Appeal, No. 41, April T., 1900, by plaintiff, in suit of Peter Beech against Elizabeth Kuder et al., from decree of C. P. No. 3, Allegheny Co., Aug. T., 1898, No. 524, dismissing bill in equity. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by RICE, P. J.

Hearing on bill and answer. Before EVANS, J.

The facts sufficiently appear from the opinion of the court below as follows:

### FINDINGS OF FACT.

The plaintiff, Peter Beech, claims to be the owner of a certain

tract of land in Versailles township, Allegheny county, Pa., over which a stream of water for many years ran in a well-defined course onto the land of defendants, and that the defendants dammed the said watercourse and threw the water back onto the land of the plaintiff. For many years prior to 1889 a stream of water, flowing from springs on land known as the Hickman farm, flowed across the land now owned by the plaintiff and onto the land now owned by the defendants, and across that land to a larger run. In 1889, the natural bed of the stream was dammed up by the flood of that year and from that time until 1894 the water from the springs on the Hickman farm flowed in a channel onto the farm of the plaintiff and got to the larger run on no defined channel. In the spring of 1894, Peter Stokes, then the owner of the land now owned and occupied by the plaintiff, cleaned out the original channel on his farm and began throwing the water through the old channel onto the lands of the defendants. In December, 1894, the defendants filled up the channel of the stream on their land and barricaded with logs and stones and dirt the course of the stream at the point where it came from the land of the plaintiff to the land of the defendants, and the water was thereby turned back onto the land of the plaintiff, at that time the property of Peter Stokes. Peter Stokes, then the owner of the land now owned by the plaintiff, by means of logs and stones, turned the course of the water from the point where it had met his lands onto the lands of defendants' down his side of the line fence dividing his land from the defendants land and into the larger run into which it had formerly flowed, stating to one of his neighbors that he had done this, and stating further that " he wasn't going to any expense about it and he would fix it up the best he could to keep the water off the ground." The course of the stream continued on the Stokes side of the fence until he disposed of the property to the plaintiff in 1897, and is on the same course at the present time.

### CONCLUSIONS OF LAW.

[The act of Peter Stokes, the owner of the land now owned by the plaintiff, in accepting the water discharged by this run in 1894 when it was turned back on his farm by defendants and providing a way for it over his own land to the larger run

for the reason, as he said, that he did not want any more trouble and expense in the matter, constituted an acquiescence on his part in the changed course of the stream.] [1]

[So far as the evidence shows he has never to this day objected to the running of the water over his land, and while the simple nonuser of an easement might require twenty-one years to lose the right to the easement, yet where as in this case there was a positive acceptance of a new course for the stream that would constitute an abandonment of his former right and an acquiescence in the changed course.] [2]

[His successor in the title, the plaintiff in this case, can have no higher rights than his grantor had. If Stokes abandoned his right to have this water discharged over the lands of the defendant and provided a watercourse over his own land, then his successor who took title to the land with the stream so located on it cannot now disturb the course of the stream which was made by agreement with the owners of the two farms in 1894.] [3]

### DECREE.

[And now, June 21, 1899, the above cause came on to be heard and upon consideration thereof it is hereby ordered and decreed that the bill be dismissed at the costs of the plaintiff.] [4]

Plaintiff appealed.

*Errors assigned* were (1–3) to conclusions of law of the court below, reciting same.   (4) To the decree, reciting same.

*R. A. Balph* and *I. S. Stentz*, with them *R. A. Hitchens*, for appellant.—A right to overflow another's land can only be acquired by deed, or, what is evidence of it, prescription: 2 Washburn on Real Property (4th ed.), 303 ; Snowden v. Wilas, 19 Ind. 10.

The construction of a dam, in a stream, throwing water back upon the owner above, creates an actionable nuisance: Wood on Nuisances (3d ed.), p. 149 ; Alexander v. Kerr, 2 Rawle, 83 ; Kauffman v. Griesemier, 26 Pa. 407.

To work an estoppel in a case of this class, the acts of the party affected by the nuisance must have been such as to make

any attempt on his part to stop the nuisance or recover damages therefrom a positive fraud : Wood on Nuisances (3d ed.), 1187.

The primary ground of the doctrine is, that it would be fraud in the party to assert what his previous conduct had denied, when on the faith of that denial others have acted. The element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up : Hill v. Epley, 31 Pa. 331.

Peter Beech, the owner of the fee, has acquired all the rights of Peter Stokes and asserts them with equal force and effect : Alexander v. Kerr, 2 Rawle, 83.

Lastly, the court erred in entering the decree dismissing this bill in equity, because there are no acts or declarations shown or facts found by the court which would estop the plaintiff from asserting his rights in abating this nuisance upon his property ; because the right of the plaintiff in this particular is a natural right, and not an easement, and cannot' be taken away from him except by actual grant or adverse enjoyment for a period of twenty-one years (Wheatly v. Baugh, 25 Pa. 525), and because there is no testimony in the case justifying the finding of the court that this watercourse, as it is at present, is there by agreement of Peter Stokes, Peter Beech or any other person or persons.

*T. C. Jones* and *J. C. Boyer*, for appellees.—It has been held in cases strictly analogous to this present case that a mere acquiescence in the changed condition resulting from an obstruction of the watercourse by flood has been sufficient to constitute an abandonment : Woodbury v. Short, 17 Vt. 387 ; Ford v. Whitlock, 27 Vt. 265.

This case is not a case of mere nonuser, and it is well said by Angell on Water Courses, sec. 243*a*, that "the cesser of use, coupled with any act clearly indicative of an intention to abandon the right would have the same effect without reference to time :" Taylor v. Hampton, 4 McCord (S. C.), 96 ; Regina v. Chorley, 12 A. & E. N. S. 515.

Any act of the dominant owner that is inconsistent with his further enjoyment of the right is an abandonment of it : Jones on Easements, sec. 852.

A cesser to use accompanied by an act clearly indicating an intention to abandon the right would have the same effect as a release, without reference to time: Washburn on Easements, 709.

OPINION BY RICE, P. J., October 8, 1900:

Riparian proprietors are entitled, in the absence of grant, license or prescription limiting their rights, to have the stream which washes their lands flow as it is wont by nature, without material diminution or alteration. Each proprietor may, therefore, insist that the stream shall flow to his land in the usual quantity, at its natural place and height, and that it shall flow off his land to his neighbor below in its accustomed place and at its usual level: Gould on Waters, sec. 204. In the leading Pennsylvania case it was said: " The natural streams of water existing by the bounty of Providence, for the benefit of the land through which they flow, are incidents annexed to the land itself: Tyler v. Wilkinson, 4 Mason, 397; Arnold v. Foot, 12 Wend. 330. They do not begin by consent of parties, nor by prescription, but ex jure naturæ, and therefore they are not extinguished by unity; nor can they be obstructed or diverted to the prejudice of adjacent proprietors: Sury v. Piggatt, Popham, 170; 3 Bulst. 339. It was said by Sir JOHN LEACH in Wright v. Howard, 1 Sim. & Stuart, 190, that, " every proprietor who claims a right either to throw the water back above, or to diminish the quantity which is to descend below, must, in order to maintain his claims, either prove an actual grant or license from the proprietors affected by its operations, or must prove an uninterrupted enjoyment of twenty years:" Wheatley v. Baugh, 25 Pa. 528. It results from an application of these familiar elementary principles to the facts found by the learned judge that the acts of the defendants in filling up the channel of the stream on their land, and barricading the same with logs, stones and dirt, whereby the water was turned back on the land of the plaintiff, constituted an actionable nuisance. And as the obstruction was manifestly intended to be permanent and continuing, and as there was not even a pretense of right thus to obstruct the stream, the upper riparian owner was not bound to await the slow process of successive actions of trespass, but might in the first instance appeal to a court of equity for relief. But, it is urged, he acquiesced;

therefore, he must be deemed to have abandoned his right to have the stream flow off his land as it was wont by nature, and, pursuing the argument to its logical end, the defendants must be held to have acquired the right, for all time, to throw the water back upon his land. We cannot affirm this proposition. There is not a spark of testimony that he ever gave his consent to this change in the course of the stream, nor does the learned judge so find as a fact. What he did was simply to take care of the water, after it had been turned back upon his land, in such a manner as to minimize the damages. To say that he "accepted" the water does not correctly define his action. It was forced back upon his land, and it seems too plain for argument, that his assent cannot be inferred as a fact or presumed as a matter of law from the mere fact that he did not invite a personal conflict with his neighbor by opposing force with force. Nor can his declaration to a stranger that "he wasn't going to any expense about it, and he would fix it up the best he could to keep the water off the ground" be invoked as evidence of a grant to the defendants of the right to continue the unlawful obstruction, or as an estoppel. Let it be granted that the upper owner did not then intend to go to the expense of a lawsuit over the matter, that he intended to submit to the wrong and make the best of it, can it be contended that he thereby forfeited his right and barred himself from asserting it either in a court of law or of equity? Clearly not. If this intention had been expressed to the defendants and relying upon it they had changed the uses of their land, so that to restore the stream to its original course would do them injury, a different question would be presented, which we need not discuss. There is no evidence that this was ever communicated to the defendants, or that they changed their situation in reliance upon it, or that the restoration of the stream to its original course will affect their land or its uses differently than it did originally. There are lacking not only the essential elements of an estoppel, but also the facts essential to the proper application of the equitable principle as to the "balance of injury." The doctrine of the two Vermont cases relied on by the appellee's counsel (Woodbury v. Short, 17 Vt. 387; Ford v. Whitlock, 27 Vt. 265) was thus stated by Chief Justice REDFIELD in the last cited case: "It seems to us analogous to the rules of law which have been

applied to dedications to public use of land; and it seems to be highly equitable and just, where one has by his own act, either originally changed the course of a stream, or suffered it to remain in a channel cut by some sudden convulsion until others have expended money in erections, as in the present case, in faith of the stream remaining in the new channel, or, as in the case of Woodbury v. Short, may be supposed to have done so, that the stream should not then be allowed to be restored to its former channel to the detriment of other riparian proprietors." But in the present case the course of the stream was not changed by a sudden flood, nor by the act or consent of the plaintiff or his predecessor in title, but by the tortious act of the defendants. Nor does it appear that they have improved or changed the uses of their land or incurred expense in the faith of the stream remaining in its changed course. The doctrine of these cases, therefore, does not apply. It might have some pertinency if the plaintiff or his predecessor had changed the course and was now seeking to have the original channel restored. But we know of no principle that will sustain the defendants in saying, " True we turned the water back on the plaintiff's land without right, yet as he did not forcibly destroy the dam we had erected on our land but chose the peaceable course of caring for the water so as to damage his land as little as possible, he must be deemed in law to have abandoned his right to have the stream flow in its ancient course and to have agreed to have it flow for all time in its changed course." We do not think this is the correct legal conclusion from the facts found by the learned judge.

The decree is reversed, the bill is reinstated and it is now ordered, adjudged and decreed that the defendants remove the obstructions upon their land to the natural flow of the water in the stream described in the bill, that they be enjoined and restrained from hereafter obstructing the water in said watercourse so as to prevent the same from flowing off the plaintiff's land as it was wont to do prior to the placing of said obstruction, and that they pay the costs incurred in the court below and on this appeal.