# Metzgar, Appellant, *v.* Lycoming Township.

*Practice, C. P.—Nonsuit—Evidence—Striking out evidence.*

1. Where the trial court strikes out a large part of the evidence, and then enters a nonsuit, the appellate court in reviewing the case will consider the evidence as if it had not been stricken off.

*Waters—Road law—Supervisors—Culverts—Natural water course— Negligence—Sewers.*

2. An action will lie against private and municipal corporations and natural persons to recover damages resulting from a negligent or intentional obstruction of a natural stream of water flowing within its own banks.

3. Where township supervisors obstruct a natural live stream of water which flows across a highway, so that ordinary floods damage an abutting owner's property as a result of such obstruction, without fault of the owner, the latter is entitled to recover damages for the injuries to his land in an action of trespass, based on the negligence of the supervisors.

4. The rule that no damage can be recovered from a municipality for injuries resulting from a failure of judgment on the part of the officers of the municipality in constructing a sewer to carry off surface water, does not apply to the construction of the culvert or drain to carry a highway over a natural live stream of water.

Argued Feb. 24, 1909. Appeal, No. 18, Feb. T., 1909, by plaintiff, from order of C. P. Lycoming Co., Sept. T., 1907, No. 266, refusing to take off nonsuit in case of Aaron Metzgar *v.* Lycoming Township. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for injuries to land. Before ORMEROD, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) in striking out the evidence; and (3) in refusing to take off nonsuit.

*James B. Krause*, for appellant.—There is a distinction between natural streams and surface water as to overflow of water: Rose *v.* St. Charles, 49 Mo. 509; Pumpelly *v.* Green Bay Co., 80 U. S. 166; Arimond *v.* Green Bay, etc., Co., 31 Wis. 316.

Due care must be taken not to obstruct the natural flow, including that at seasons of either low or usual high water, and the failure to do so will render the offender liable for injuries to landowners caused by the penning back of the waters and the overflow of their lands: Riddle *v.* Delaware County, 156 Pa. 643; Fick *v.* Penna. R. R. Co., 157 Pa. 622; Brown *v.* Pine Creek Ry. Co., 183 Pa. 38; Berninger *v.* Sunbury, H. & W. R. R. Co., 203 Pa. 516.

The question is for the jury: Elliott *v.* Oil City, 129 Pa. 570; Torrey *v.* Scranton, 133 Pa. 173; Miller *v.* R. R. Co., 29 Pa. Superior Ct. 515.

*H. W. Whitehead*, for appellee.—We think the principle of law is well settled that, where culverts were not defectively

constructed or left out of repair, the municipality cannot be made responsible for an error in the judgment of the township authorities as to the size said culverts should have been constructed: Fair v. City of Philadelphia, 88 Pa. 300; Collins v. City of Philadelphia, 93 Pa. 272; Bear v. City of Allentown, 148 Pa. 80; Belafeld v. Borough of Verona, 188 Pa. 627; Sullivan v. Pittsburg, 5 Pa. Superior Ct. 357; Pressman v. Borough of Dickson City, 13 Pa. Superior Ct. 236; Lorah v. Amity Township, 35 Pa. Superior Ct. 529; Siegfried v. South Bethlehem Borough, 27 Pa. Superior Ct. 456.

OPINION BY MORRISON, J., July 14, 1909:

This was an action of trespass brought by the plaintiff to recover damages which he alleges he sustained because of the overflow of water upon his lands caused by the insufficiency of certain culverts placed across the public highway, thereby causing the water to be dammed up and overflow the road and go down upon his premises, situated on the lower side of the road, destroying his grain and carrying away the surface of the ground.

At the close of the plaintiff's testimony the learned counsel for the defendant moved the court to strike out all the evidence as to the size of the culverts and then followed this with a motion for a compulsory nonsuit. The learned court granted both motions. If he was right in striking out a large portion of the material evidence, it was probably quite safe to grant the compulsory nonsuit. But in determining whether or not the court erred in refusing to take off the nonsuit we are disposed to consider the evidence as if it had not been stricken out. When the court is about to grant a compulsory nonsuit, it would seem well to leave the evidence in the record. This question is raised by the first assignment.

The learned court below granted the nonsuit on the theory that an action in trespass would not lie because of the discretion vested in the supervisors in regard to sewers, drains, etc. The court said:

"This being an action of trespass, if there was no negligence on the part of the defendant supervisors, there could be no re-

covery, and it is not alleged that they were guilty of any negligence in the maintenance of the culverts placed by them.

"That the evidence showed conclusively that there was a great reduction in the size of the culverts must be conceded, but admitting that to be true, can it be said that the reduction, if too great, was more than an error of judgment on the part of the supervisors?

"It is well settled in Pennsylvania that a municipality is not liable for damages resulting from the errors of judgment on the part of the officers of the municipality."

The evidence would warrant the jury in finding that several of the streams of water which flowed through the culverts across the highway were live, natural streams, and that at least one of them, Hamilton's Run, was quite an important stream flowing between well-defined banks and passing across the highway through an opening of thirty-two square feet. This bridge was replaced by a thirty-six inch iron pipe having a capacity of about seven square feet, being reduced to nearly one-fifth of the size of the former opening for the stream to pass through. The important question for consideration is whether the learned court below was right in holding that it makes no difference whether the water to be taken care of comes through natural, live streams, flowing across the land and highway, or from what is known as surface water, caused by rains and the melting of snow.

The first case cited and relied on by the appellee is Fair v. City of Phila., 88 Pa. 309. The syllabus of this case is as follows: "The mere omission of municipal authorities, to provide adequate means to carry off the water which storms and the natural formation of the ground throw on a city lot, will not sustain an action by the owner thereof, against the municipality for damages arising from the accumulation of water on said lot by reason of the construction of a sewer, that was not of sufficient size to carry off the surface drainage.

"Where the sewers were not defectively constructed or left out of repair, the municipality cannot be made responsible for an error in the judgment of the city authorities, as to the size a sewer should have been constructed." But that case clearly

refers to surface water and it is not controlling as to natural streams of water. That a municipality is not liable in trespass for an error of judgment of the supervisors in planning a system of sewers for draining the streets is established by that case and many others. That case is cited and considered in Torrey v. City of Scranton, 133 Pa. 173, where it was held as stated in the syllabus: "A municipal corporation, diverting the flow of surface water so that it accumulates and flows upon abutting property, where it would not flow naturally, is liable to the abutting owner in damages for the resulting injuries."

The learned court below and the counsel for the appellee rely with apparent confidence upon Collins v. City of Phila., 93 Pa. 272. In that case the syllabus shows what was decided. The Supreme Court in a very brief opinion held that the facts brought that case and Fair v. Phila., 88 Pa. 309, within the same rule, saying: "We can discover no material difference between that case and those [referring to the cases before the court] upon which a distinction can be based. Whether the natural drainage be by a creek or by the surface—it was in both cases obstructed by the insufficient provision made by the defendant to supply its place. There was no negligence, but want of judgment, and the municipality cannot be made liable in damages for the mistake which may be committed by its officers in the honest, fair exercise of their duties."

We think the learned court below failed to note that the cases here referred to by the Supreme Court arose under an exercise of discretionary power conferred upon the municipality by an act of the legislature authorizing the building of a sewer along the bed of a creek, of sufficient capacity to carry off its waters. The legislature did not attempt to define the size or quality of the sewer nor the manner of its construction, but left that all to the discretion of the municipal authorities. Therefore, it is plain why the Supreme Court considerered Fair v. Phila., 88 Pa. 309, and Collins v. Phila., 93 Pa. 272, as resting upon the same principle. But we do not understand the text-writers and the decisions of our Supreme Court to accord to municipal officers the same discretionary control over natural, live streams of water that they have over artificial sewers and drains con-

structed to take care of surface water. We will consider this question further along.

Bealafeld v. Borough of Verona, 188 Pa. 627, is cited and relied upon by the court below in refusing to take off the nonsuit. The syllabus of that case is: "A municipality in constructing a sewer exercises a judicial discretion, and is not responsible for an error of judgment in furnishing a sewer inadequate for the purpose contemplated. Fair v. Phila., 88 Pa. 309, followed." But that case referred to a sewer constructed to take care of surface water, and it is not controlling in regard to a natural stream of water like Hamilton's Run in the present case. Bear v. City of Allentown, 148 Pa. 80, is also cited. But that was a case of alleged error in judgment in the construction of a sewer to take care of surface water, and it was held that an action of trespass would not lie for an error of judgment in the construction of the sewer. That case does not touch the question of a sewer or a drain constructed to control a natural stream of water flowing within its own banks.

Sullivan v. Pittsburg, 5 Pa. Superior Ct. 357, is also cited and relied upon, but that case refers to drains and sewers constructed to take care of surface water and it is not controlling as to natural streams. The same may be said as to Pressman v. Dickson City Borough, 13 Pa. Superior Ct. 236. The learned court also cited and relied on our late case of Lorah v. Amity Twp., 35 Pa. Superior Ct. 529, but we do not regard that case as ruling the question of obstruction of a natural stream of water.

We have already indicated that in our opinion municipalities, as well as individuals and corporations, in erecting bridges or culverts over live or natural streams of water, must take into consideration the surrounding circumstances and the apparent needs, and take care not to obstruct the flow of the water even in the case of ordinary floods. We know of no legislative authority granting special immunity to townships in this regard; so far as we can discover, they stand on the same footing as an individual or private corporation, each being liable for damages that may ensue from the erection of an inadequate culvert or opening made to carry a natural live stream of water under a highway. If such culvert, even though well constructed, is

manifestly too small and the ordinary flow of water will not pass through it, but dams up and overflows the highway and injures private property, the municipality will be liable to respond in damages. We believe the law to be in Pennsylvania as stated in 2 Dillon on Municipal Corporations, 1316: "In this connection may be considered the liability of municipal corporations for injuries to private property in consequence of being overflowed with water caused by improvements made, or work done, upon the streets, under their authority. And here it is important to distinguish between natural streams flowing in channels between defined and actual banks, and surface water, caused by rain or melting snow, for the law relating to them is very different, and the powers of the municipality much greater with respect to the latter than the former. Assuming the stream to be of the former character, and that the municipality is without any valid legislative powers changing what would otherwise be the legal rights of the parties, its authorities under the general power to grade and improve streets, or construct public improvements beneficial to it, cannot deprive others of their property rights in the water course, or injure them by badly constructed and insufficient culverts or passage-ways obstructing the free flow of the water, without being liable therefor." That learned author calls attention in the very next section to the difference in the rule as to surface water caused by rain and snow, and we understand the law in Pennsylvania to be substantially as stated by him on that subject also.

In 30 Am. & Eng. Ency. of Law, p. 375, it is said: "Where bridges, culverts, etc., are constructed across water courses, by railroad companies, municipalities, or other corporations, or by individuals, due care must be taken not to obstruct the natural flow, including that at seasons of either low or of unusual high water, and the failure to do so will render the offender liable for injuries to landowners caused by the penning back of the waters and the overflow of their lands; but such structures need not be constructed in such a manner as to permit the unobstructed flow of the water course in times of unprecedented and extraordinary freshets." Many authorities are cited to sustain the above proposition

In Gould on Waters, sec. 260 (3d ed.), it is said: "A city or town which constructs a street across a water course without proper culverts or drains, or which negligently constructs or maintains the bridges or culverts in a highway across a natural stream, so as to cause the water to flow back upon and injure the land of another, is liable to an action of tort to the same extent that any corporation or individual would be liable for doing similar acts. . . . It is important to distinguish between natural streams, flowing within defined banks, and surface waters, for the powers of a municipality are much greater with respect to the latter than the former." The author cites in support of this proposition numerous authorities.

In Woolrych on Waters, p. 279, it is said: "A distinction was taken between a way, or common and a water course, because the former begin by private right or by prescription, or assent; they are particular benefits to take part of the profits of the land, and so upon unity, the greater profit drowns the less; but it was said, that a water course has its origin in neither of the above ways, for it begins ex jure natura, and cannot be averted."

In 48 American Digest, col. 2198, sec. 30, it is said: "A water course is a stream of water, usually flowing in a certain direction in a regular channel, with bed and banks; though it is not necessary that the water should flow continually, but the channel may sometimes be dry." See also Black's Pomeroy on Water Rights, chap. 2, secs. 4–11; Law of Water Courses by Angel, chap. 1, where the distinction between natural water courses and surface or artificial drainage is clearly recognized. Also 2 Farnham on Water and Water Rights, secs. 455, etc., where the distinction between natural and artificial water courses is recognized and considered. The following Pennsylvania cases seem to be in harmony with the above principles: Riddle et al. v. Delaware Co., 156 Pa. 643; Fick v. Penna. R. R. Co., 157 Pa. 622; Brown v. Ry. Co., 183 Pa. 38; Berninger v. Sunbury, etc., Ry. Co., 203 Pa. 516; Chestnut Hill, etc., Turnpike Co. v. Rutter, 4 S. & R. 6; Wheatly v. Baugh, 25 Pa. 528; Gring v. Water Co., 7 Pa. Superior Ct. 63; Craig v. Borough, 7 Pa. Superior Ct. 526; Beech v. Kuder, 15 Pa. Superior Ct. 89;

Railway Co. v. Gilleland, 56 Pa. 445; B. & O. Railroad Co. v. School Dist., 96 Pa. 65.

In Riddle v. Delaware Co., 156 Pa. 643, the court below was requested to charge: "That if, in the opinion of the commissioners of Delaware County, the bridge was of sufficient capacity to vent the waters of Chester creek, the defendant is not liable for the damage to the property of the plaintiff by reason of any mistake of the commissioners in not making the bridge of greater capacity." That point was refused and there was a verdict and judgment for the plaintiff for $14,000, but the Supreme Court affirmed the judgment and expressly held that there was no error in refusing to affirm the above point.

In Rife v. Middletown, 32 Pa. Superior Ct. 68, the question we have been discussing was before the court, but we affirmed the judgment on another ground, saying: "Independently, therefore, of the substitution of the pipes for the open stream, there was a distinct charge of negligence in the manner in which they were cared for. The testimony upon this subject was such as to compel its submission to the jury."

The learned counsel for the appellee relies on Siegfried v. South Bethlehem Borough, 27 Pa. Superior Ct. 456, but we do not understand that case to commit this court to the doctrine that sewers and natural streams of water rest on the same theory when controlled by municipal authorities. In that case our late Brother Smith, speaking for the court, said: "Its liability is confined to injuries due to interference with the natural flow of water, faulty construction, and failure to maintain the sewer in proper condition, and free from obstructions that materially affect its use; and the rule is the same whether a natural water course is adopted for drainage purposes, or an artificial channel is built." Numerous authorities are then cited, but if the learned judge meant to convey the idea that no distinction exists between a natural water course and a sewer or artificial drain, the authorities he cited do not sustain that proposition. Among these authorities are Blizzard v. Borough of Danville, 175 Pa. 479; Owens v. Lancaster, 182 Pa., 257.

But Gift v. Reading, 3 Pa. Superior Ct. 359, written by Judge Smith, shows clearly that he recognized the distinction between

natural water courses and sewers and artificial drains. All of the above authorities are in harmony with the common law in regard to natural water courses.

We consider the Pennsylvania cases in harmony with the common-law rule and in support of the doctrine that an action will lie against private and municipal corporations and natural persons to recover damages resulting from a negligent or intentional obstruction of a natural stream of water flowing within its own banks.

It has been suggested that our general highway act of 1836 and its supplements confers power on municipal authorities to construct highways across runs, creeks and rivulets. This is true, but we cannot find in the statutes of Pennsylvania any authority empowering municipal officers to obstruct such streams by constructing highways. They must carry the highway over such streams, taking care to leave free and sufficient passageways for the water, even in times of ordinary floods.

In our opinion, the plaintiff presented a case for the jury. If the evidence satisfied that body that the defendant's supervisors obstructed natural, live streams of water which flowed across the highway so that ordinary floods damaged the plaintiff's property as a result of such obstruction, without fault of the plaintiff, then he was entitled to recover in his action of trespass, based on the negligence of the said supervisors.

We sustain the first and third assignments of error, and reverse the judgment with a procedendo.