# Lang, Appellant, *v.* Punxsutawney Borough.

*Sewers—Damages—Trespass—Viewers.*

Where property is injured as the direct, immediate and necessary or unavoidable consequence of the location or construction of a sewer, the only remedy for the injuries sustained is by petition for the appointment of viewers to assess the damages; the owner cannot, for such injuries, maintain an action of trespass; but where the injuries are due to the negligent act of the municipality in permitting the sewer to become filled with sand, gravel, or other débris, so that it cannot accomplish

the object for which it was designed, an action of trespass is the appropriate remedy.

Argued May 3, 1910.   Appeal, No. 30, April T., 1910, by plaintiff, from order of C. P. Jefferson Co., Nov. T., 1907, No. 107, refusing to take off nonsuit in case of J. S. Land v. Punxsutawney Borough.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Trespass to recover damages to real estate caused by the construction of a sewer.   Before HALL, J., specially presiding.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*H. Clay Campbell*, for appellant.—The defendant corporation is liable in this case upon two distinct grounds, viz: (1) For the diversion and change of the natural flow of Graveyard Run, without having provided a sufficient outlet for the water.   (2) For gross negligence in permitting the ends of the sewers to connect at the surface with open ditches, allowing the gravel, sand and other matter from the surface during rainstorms to be carried into the sewer, clogging it up and flooding plaintiff's premises: Weir v. Plymouth Borough, 148 Pa. 566; Elliott v. Oil City, 129 Pa. 570; Colwyn Borough v. Tarbottom, 9 Pa. Superior Ct. 414.

Where the change of the natural flow of a stream of water by a municipality has been made by it in consequence of its public works, it becomes liable not only for the negligent manner of performing the work, but for the insufficient capacity of the sewer or outlet to carry off the water: Haus v. Bethlehem, 134 Pa. 12; Stork v. Philadelphia, 195 Pa. 101.

*W. M. Gillespie*, for appellee.

OPINION BY HEAD, J., October 10, 1910:
Prior to the occurrences of which the plaintiff complains

the defendant borough, in the exercise of a familiar municipal power, had constructed a sewer which might be designated the Farmers alley or Findley street sewer.  It had also constructed a separate or branch line known as Graveyard run sewer.  This latter occupied the bed or channel of a spring run, known as Graveyard run, and apparently was designed to take care of the water it carried, as well as for general sewer purposes.  The premises of the plaintiff were connected with the sewer first mentioned.  Some considerable time after this connection had been made, the borough, in the further development of its sewer plan, connected up by a third line the two separate or branch lines already mentioned.

We do not understand it to be contended by the able counsel for appellant that there was any lack of municipal power to construct and locate these several lines.  As a consequence these acts were lawful municipal acts intended to promote the public good and the common welfare.  If the property of the plaintiff suffered any injury as the direct result of this public work, when done in a lawful way, he would be within the protection of the constitutional provision on that subject, and would be entitled to compensation for such injury.

But it is plain that the remedy for such an injury would not be by an action of trespass, because the municipal act which caused the injury was but an exercise of lawful power, the same power under which it grades its streets and makes other improvements of that character.  For all such injuries, damages must be obtained through boards of viewers so that the entire injury can be provided for in a single assessment of damages.  So much was decided by this court in Cooper v. Scranton City, 21 Pa. Superior Ct. 17.  The reasons why damages directly resulting from the location or construction of a public sewer cannot be recovered in an action of trespass are well set forth by our Brother W. D. PORTER in the opinion in the case cited and need not here be repeated.

It seems clear enough to us that the act of the defendant

borough in locating and constructing these sewers, even though one of them was located in the channel of Graveyard run, was of a radically different character from those for which recoveries in trespass were sustained in Weir v. Plymouth Borough, 148 Pa. 566; Torrey v. Scranton, 133 Pa. 173, and kindred cases. In these the boroughs, by artificial means, had caused to accumulate quantities of surface water and then turned these accumulations upon the properties of the plaintiffs where it would not have flowed by the operation of natural laws. Nor do we think that the principle declared by this court in Metzgar v. Lycoming Township, 39 Pa. Superior Ct. 602, is applicable to the case of a borough or city armed with legislative power to construct and maintain a system of sewers within the corporate limits. As we have already indicated, the location and the construction of such sewers was but the exercise of the same municipal power under consideration by this court in Cooper v. Scranton, 21 Pa. Superior Ct. 17, although there the power was exercised to grade streets, whereas here it was exercised in the discharge of the kindred municipal function of constructing sewers.

Without attempting to refer in detail to the many cases which are cited in the briefs of counsel and considered by the learned court below, we are of the opinion that in so far as the plaintiff's property was injured, if it was injured, as the direct, immediate and necessary or unavoidable consequence of the location or construction of the sewers named, or any of them, such injury would furnish no foundation for an action of trespass. To this extent the learned trial judge was right in entering a compulsory nonsuit and refusing to take it off.

But although a municipality cannot be called upon to respond in an action of trespass for the proper exercise of a municipal power, even when attended by injury to private property, it is equally clear that if the power be exercised in a negligent manner, the borough must answer. As a consequence, if the borough negligently permitted

its sewer to become filled with sand, gravel, or other débris, so that it could not accomplish the object for which it was designed, and a citizen is thereby injured, he may recover in an action of trespass. This distinction was fully recognized by the learned trial judge. For the plaintiff's statement, although lacking in the precision with which a plaintiff should state the nature and cause of his injury, nevertheless does complain that large amounts of gravel, slate and other earth matter were carried into said sewer, and this, with the heavy flow of water, filled up the end of the sewer and caused water, sewerage and filth to flow back up into the plaintiff's cellar. Because of this averment the learned trial judge on several occasions properly overruled objections to testimony offered by the plaintiff tending to establish this averment.

In his opinion, however, refusing to take off the nonsuit, the learned court below seems to have become satisfied not only that there was no averment in the plaintiff's declaration which would support testimony tending to show that the sewer had been permitted to fill up; but further, that there was no proof which would be sufficient to establish such an averment even if clearly made. In neither respect are we able to assent to the correctness of his view.

We have already substantially quoted the language of the declaration and averted to the fact that the learned trial judge on more than one occasion admitted testimony because of such averment which would otherwise have been inadmissible. The plaintiff himself, when on the stand, declared that he had seen the borough officials cleaning out the sewer, and thus described what he saw: Q. What kind of material did they get out of that sewer there? Did you see it? A. Well I have seen coal, big cinder and gravel that size (indicating) and dirt of different kinds. Q. Sand? A. Not altogether. Sewer dirt, all kinds of dirt." On another occasion he was asked: "Q. Do you know that the coal and cinder was washed out of Graveyard run? A. I know that there was gravel

enough to plug the sewer up." A witness, Torrence, having stated that the sewer was shut up half the time and overflowed, etc., was asked: "What closed that up, Mr. Torrence? A. Well, it was closed up by gravel and stuff from the fair ground hill and what washed in off them other hills into them other sewers and came down under the house along Graveyard run. . . . It would come down to the electric light plant there, and there was a bend and it would fill up there that high (indicating). Sometimes throw out nearly a wagon load of gravel and stuff and shut it up entirely below."

In the face of such testimony we cannot agree that the case was properly withdrawn from the consideration of the jury. Being of opinion that there was a sufficient averment that the defendant borough had permitted its sewer to become closed up and that there was evidence in support of that averment which would have sustained a verdict, we must conclude that the learned judge below fell into error when he refused to take off the compulsory nonsuit.

Judgment reversed and a procedendo awarded.


MORRISON, J., concurring:

I concur in the judgment of this court, in the above-entitled case, but I would go a step further and hold that the case is ruled by Metzgar v. Lycoming Twp., 39 Pa. Superior Ct. 602. I would so hold because Graveyard run appears to be a natural stream of water, flowing within well-defined banks, and if the municipal authorities of the borough undertake to carry this stream through a sewer, care must be exercised that the sewer is of sufficient size and proper structure to take care of the water of the run and such water as other sewers may carry into it, and this is so even in times of ordinary floods.