# Annie E. Sullivan v. City of Pittsburg, Appellant.

*Municipal law—Discretion of authorities in location of sewers.*

Municipal authorities have some discretion in extending, laying out and grading streets and in taking care of drainage. They may not, however, construct ditches or sewers so as to cast water directly upon private property, but they may adopt such appropriate means to carry surface water along the side of a street as they see fit, and if the sewer or ditch constructed for that purpose proves inadequate from lack of judgment as to capacity, and water backs up therefrom or overflows upon private property, there can be no recovery against the city by the person injured by reason of such backing up or overflow.

Argued April 28, 1897. Appeal, No. 129, April T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny County, November Term, 1895, No. 362 on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass to recover damages alleged to have been caused to plaintiff's property by failure of city to provide sewers sufficient in size to carry off water in front of the plaintiff's house. Before KENNEDY, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $200. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions in favor of defendant. (2) In charging the jury as follows: "So if you should find that the city did obstruct the natural flow of water in its natural course down that side of the street, or diverted it from its natural course and turned it across the street, and in so doing there was an overflow upon the property of the plaintiff, and injury to her property, she is entitled to recover such damage as will compensate her for the injuries which occurred through this action of the city." (3) In charging the jury as follows: "The city would not be bound to protect against such an extraordinary fall of rain as could not be reasonably foreseen and anticipated, but it is bound to provide, if it diverts it from its natural course, what would be a reasonably sufficient

drain for the carrying off of the water down the street, without its overflowing and causing injury to the adjoining property. If you should find that the city in this change of the watercourse had obstructed the original and natural course of the water, diverted it therefrom, and in so doing failed to provide a sufficiently large sewer or drain to carry it off, and it overflowed, causing the injury complained of, you shall find such damages as will compensate the plaintiff for the injuries which resulted therefrom."

*J. H. Beal,* with him *Clarence Burleigh* and *A. J. Niles,* for appellant.—We submit that these facts bring the case squarely within the decisions of the Supreme Court in Fair v. Philadelphia, 88 Pa. 309, Collins v. Philadelphia, 93 Pa. 272, and Bear v. Allentown, 148 Pa. 80.    See also Lafferty v. Girardville, 1 Mona. 513; Costello v. Conshohocken, 8 C. C. 639; Mills v. Brooklyn, 32 N. Y. 489.

The reasons for leaving the determination of questions of this character to the judgment and discretion of the officers having charge of the work, are very strongly stated in Carr v. The Northern Liberties, 35 Pa. 324.

*D. R. Jones,* for appellee.—It is a case of obstructing a watercourse or a gully (which is not denied), and then of not taking care of the largely increased water thereby diverted and thrown into its drains: Bohan v. Avoca Borough, 154 Pa. 404; Huddleston v. West Bellevue Borough, 111 Pa. 110; Elliott v. Oil City, 129 Pa. 570; Torrey v. Scranton, 133 Pa. 173.

OPINION BY WILLARD, J., July 23, 1897:

The facts in this case are fairly stated in the appellant's history of the case, and are not seriously questioned by the appellee. Her property is located on Morris street.    This street is not an improved street but a pathway intersecting another street called Carolina street.    Carolina street is the width of a fair wagon track and where it passes the intersection of Morris street there is a steep descending grade.    The property of the appellee is located at the intersection of these two streets, fronting mostly on Morris street, but one corner of her lot abuts Carolina street. Her house is below the grade of the street so that the roof is

nearer grade than the foundation. Some distance above her property on the hillside Carolina street makes a bend at a point where it is intersected by Avery street on the opposite side from its intersection with Morris street, while further up the hill it is again intersected by Niagara street, which is from four hundred to five hundred feet long. This intersection is on the same side as the Morris street intersection. The surface water from Niagara street found its way into Carolina street and prior to 1886 the surface water was discharged at the bend on the left hand side of Carolina street and passed on to private property and so on down, discharging itself finally into Three Mile Run.

As improvements increased and buildings multiplied it became necessary for the city authorities to confine the surface water to the streets and prevent the casting thereof upon private property. On the side of Carolina street, opposite its intersection with Morris street, and opposite the appellee's property, there was constructed an open gutter running down that side of the street from the bend farther up, and at that point a box sewer was placed by the city diagonally across the street for the purpose of carrying the water into the gutter on the opposite side, thereby preventing its being cast upon private property. The gutter was two feet wide, and from eighteen inches to two feet deep. It successfully accomplished the object of its construction, and there was no serious trouble from 1886 to April 1894. As to the condition of the ditch at the time of the injury complained of, the plaintiff's father testified that he was there two or three times every day that the ditch was in good order, and that there never was any trouble before that time. It is not seriously contended that the injury was caused by any obstructions in the ditch. The appellee testified as follows: " Q. Your house is the small house standing to the left hand side of the picture ? A. Yes, sir.   Q. The first trouble you had was in April, 1894 ? A. Yes, sir.   Q. And you say now, as I understand your testimony, that the cause of this trouble was the putting in of this box ?   A. Yes, sir."

As to the cause of the trouble she testified: " Q. Explain to the jury what was done there, if anything. How you were annoyed.   A. In April the water ran over the street from the gutter. The gutter there is big enough to carry all the surplus

water, that is the water of the neighborhood; it always carried it and no trouble at all until the city put the box in and turned the force of the whole water to the other street, and it wasn't big enough to carry the water away. Q. And there is a gutter on the upper side of Carolina street which is intended to carry the water down along the street? A. Yes, sir. Q. And as I understand you your complaint is that that gutter was not of sufficient size to carry off the water on this occasion in 1894? A. The gutter was big enough to carry the water for the neighborhood that used to come there, until they turned the water over, turned the other water. Q. In 1894, on this occasion in April the gutter wasn't big enough to carry off the water? A. It was not big enough to carry the force of water that came down. Q. Well, how did the water get in there to knock the wall down? A. It cut across the street. The gutter wasn't big enough to carry it away. It came in such a force it cut across Carolina street and right into the corner of the house."

The evidence of any injury to any property by the action of water from the time its course was turned into the open gutters to April, 1894 amounts to nothing. It is idle to say there was no trouble till after the box sewer was put in. No fact is sworn to by any witness to indicate any injury till 1894. The use of the gutter for that period of time without any trouble was sufficient evidence that the discretion of the city as to its capacity was not recklessly exercised. "Formerly the sewer in that vicinity was of sufficient capacity to pass, and did pass, rapidly, not only the water with which it was otherwise charged, but also the surface water which either fell or flowed on the land of the plaintiff. Afterwards, and before the injury complained of, the city extended its system of sewerage westerly, thereby causing a larger volume of water to flow through the sewer past the premises of the plaintiff." The above is a quotation from the facts stated in the opinion of the court by Mr. Justice MERCUR in Fair v. Phila., 88 Pa. 309. The facts ,thus stated are identical with the facts in this case, fairly gathered from a careful consideration of all the testimony.

The gathering of surface water in a body and casting it upon private property, as in Bohan v. Avoca Borough, 154 Pa. 404 is unlawful. The accumulation of water until it was liable to become a destructive flood, and emptying it upon the plaintiff's

land as in Huddleston v. Borough, 111 Pa. 110, and Torrey v. Scranton, 133 Pa. 173, is also unlawful. But those cases are not applicable to the facts in this case.

We do not agree with the learned trial judge that, because water for many years has run in one direction, it may not, in the improvement, extension and grading of streets, be turned in another direction if the conduit is deemed adequate for the purpose by a city. The authorities of a city have some discretion in extending, laying out and grading streets and in taking care of drainage.

Gullies on steep hill sides must give way to such a system of sewerage as the authorities of a city may see fit, in their discretion to adopt, and if they determine to adopt other systems to take the place of long used gullies they have a right to do so. They may not however, construct ditches or sewers so as to cast water directly upon private property, but they may adopt such appropriate means to carry surface water along the side of a street as they see fit, and if the sewer or ditch constructed for that purpose proves inadequate from lack of judgment as to capacity, and water backs up therefrom or overflows upon private property, there can be no recovery against the city by the person injured by reason of such backing up or overflow. Such is the law of Pennsylvania as declared in a long line of decisions by our Supreme Court, among which are, Bear v. Allentown, 148 Pa. 80; Collins v. Phila. 93 Pa. 272; Fair v. Phila. 88 Pa. 309. In the last case it was held that the mere omission of municipal authorities to provide means to carry off the water which storms and the natural formation of the ground below throw on a city lot will not sustain an action by the owner thereof against the municipality for damages arising from the accumulation of water on said lot by reason of the construction of a sewer that was not of sufficient size to carry off the surface drainage; and where the sewers were not defectively constructed, or left out of repair the municipality cannot be made responsible for an error, in the judgment of the city authorities, as to the size a sewer should have been constructed. In the first case it was said by our Brother REEDER, when upon the common pleas bench trying the case, "In order to be entitled to recover under the constitutional provision referred to, there must be such an actual and immediate depreciation in the value

of the property following immediately upon the construction complained of as to constitute a material injury to the value of the property. Where, for instance, a municipality erects public works, changes or improves highways, so as to depreciate the market value of any property in the neighborhood of such works, there would be a right of action. But that is not this case. The plaintiff does not complain that the mere construction of the sewer in itself depreciated the market value of his property, and this action is not brought for such depreciation. But his complaint is that because of an error of judgment on the part of the municipal authorities in the exercise of their legislative functions the sewer was inadequate for the purpose for which it was constructed, and that consequently the water which it was intended it should carry off was dammed up and backed over upon his property, and into his cellar, undermining his foundation wall and that this damage is the damage that he seeks to recover for."

This was a view of the case based upon broad constitutional grounds and was affirmed by the Supreme Court. Notwithstanding these authorities the court told the jury: "If you should find that the city in this change of the watercourse had obstructed the original and natural course of the water, diverted it therefrom, and in so doing failed to provide a sufficiently large sewer or drain to carry it off, and it overflowed, causing the injury complained of, you shall find such damages as will compensate the plaintiff for the injuries which resulted therefrom." This instruction was erroneous.

The specifications of error are sustained and the judgment reversed.