## John Allebrand *v.* the Borough of Duquesne, Appellant.

*Respondeat superior—Municipal responsibility for trespass of councilman—Diversion of waters.*

It is not within the scope of a single member of a borough council, although he may be a member of the street committee, to act for the borough in the matter of changing the natural courses of water crossing the borough street so that an increased burden is imposed on plaintiff's land by the trespass. It follows, therefore, that the municipality cannot be held impliedly liable on the doctrine of respondeat superior for the wrongful act.

*Failure of municipality to abate nuisance—Ratification.*

The mere failure of a borough to compel a restoration of a stream, diverted by a citizen, to its natural channel is not such evidence of an adoption or ratification of the wrong as would make the borough liable as a trespasser ab initio. There is a wide difference between the commission of an actionable nuisance and the mere failure of a corporation to exercise its charter power to abate a nuisance not rendering its streets unsafe and for the creation of which it was in no wise responsible.

Argued April 24, 1899. Appeal, No. 102, April T., 1899, by defendant, from judgment of C. P. No. 1, Allegheny County, June Term, 1897, No. 725, on verdict for plaintiff. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by RICE, P. J.

Trespass. Before COLLIER, P. J.

It appears from the evidence that plaintiff was the owner of ground in the borough of Duquesne through which at the time a natural water course draining some seventy to eighty acres of land above his, ran. Plaintiff alleges that as the land was when he bought it he took care of the water that ran down the ravine himself; that he put a terra-cotta pipe there and afterwards a wooden drain, and that until the diversion of this water from its course onto his property he had no trouble. He alleges that the water was all carried off, and he alleges that before this injury, Mr. Oliver, one of the street commissioners of the borough of Duquesne, diverted the water on or above Third street so that it was thrown upon his property, and that he suffered damage from time to time by that until finally when a heavy rain came, by reason of this extra amount of water thrown upon him, three of his houses were additionally damaged; that the cellars were filled up with mud and water, and that the box drain he had made was broken down by reason of this water coming upon the property.

The court left the question to the jury whether the defendant borough so changed the natural water course as to interfere with or render useless the said drain, thus causing the injuries complained of.

Defendant submitted the following points:

[1. Plaintiff himself having testified that he did not know who changed the channel of the water course, complained of in his statement filed as the foundation of his action, he is not entitled to recover. *Answer:* Refused, and bill sealed for defendant.] [1]

[2. Under all the pleadings and evidence in the case the verdict should be for the defendant. *Answer:* Refused, and bill sealed for defendant.] [2]

Verdict and judgment for plaintiff for $550. Defendant appealed.

220    ALLEBRAND *v.* DUQUESNE BOROUGH.

Assignment of Errors—Opinion of the Court. [11 Pa. Superior Ct.

*Errors assigned* were (1, 2) refusing defendant's first and second points, reciting same.

*Chas. B. Payne*, for appellant.—There is in every case triable by the jury a preliminary question of law for the court, whether or not there is any evidence from which the fact sought to be proved may fairly be inferred: Furniture Co. v. School District, 122 Pa. 494.

Finally there is no proof that the defendant changed the water course or authorized it to be changed. On the contrary the proofs are that it had no part in, or knowledge of the fact, and the man who actually made the change so testifies. This is a worse case than that of R. R. Co. v. Schertle, 97 Pa. 450, which was "submitted to the jury without evidence and the verdict had no better foundation than a guess," in that here the verdict is against all the evidence in the case, and, as the amount thereof is just one half the claim proven, presumably based upon the theory that, without regard to the law or the evidence, the defendant could bear loss, at any rate, as easily as the plaintiff.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellee.—The borough having control over the streets was bound not to modify the natural flow of the stream. It could not permit it to be done by others. If it did so permit, like a private owner of property, it is liable in damages for injuries resulting from the modification of the natural flow. Substantially the same obligations to the owners of land adjoining the highway we consider are devolved upon the towns in the building and maintaining of their roads: Haynes v. Burlington, 38 Vt. 350.

OPINION BY RICE, P. J., July 28, 1899:

The plaintiff is the owner of a lot on the corner of Third street and Hamilton avenue. Formerly, a natural water course branched on private premises on the opposite side of Third street and flowed thence in two channels to and across the street and the plaintiff's lot. The plaintiff put on his premises an eighteen inch terra-cotta pipe to take the water of the main channel, and a box culvert to take the water of the lower and smaller channel, and afterwards erected over them five houses

fronting on Third street.    These contrivances, he alleges, were sufficient to carry off the waters of the run without changing its natural course and without injury to his property or that of his lower neighbors.    After he had improved his property in the manner described, a new channel was dug, extending from the point where the run naturally branched into two channels to Third street, and through it, and a box culvert put across the street, the whole volume of water was conducted to the plaintiff's side of the street, at a point higher up than either of the original channels, and was then allowed to find its way down the street in a single channel.    When the volume was increased by storms, he alleges, the water flowed over upon his premises and damaged them.    For this he brought an action of trespass against the borough and obtained a judgment from which this appeal was taken.

The principal matter assigned for error, and the only one that need be noticed, is the refusal of the court to charge, as requested, that under the pleadings and evidence the verdict should be for the defendant.    This requires us to look at the plaintiff's statement.    It is well drawn and distinctly alleges as the cause of action, that the borough, " by its officers and agents, diverted the said run from its natural channel . . . . dug a new channel for said run and confined all the water therein . . . . and then turned the waters of said run into a single channel along Third street, so that the same were discharged in and upon the property of said plaintiff, and so that the burden of all the waters of said run was required to be borne by the property of said plaintiff, and the same became and was greatly injured and damaged," etc.    This was a good cause of action within the principles of many adjudicated cases.    Was it proved?

We have quoted the material averments of the statement for the purpose of showing that it alleges, not the nonexercise of powers either discretionary or otherwise, nor negligence in the execution of them, but a positive act, the natural and inevitable consequence of which was to cast the water of this run upon the plaintiff's land.    This was the gravamen of his complaint. The defendant denied the principal allegation, and upon this issue of fact the case was submitted to the jury.    So far as we can discover, it was not tried on any other theory; therefore,

the only question we are called upon to consider is, whether there was any competent evidence to sustain the essential averments of the plaintiff's statement.

He does not pretend that the change was made pursuant to any ordinance or resolution of the borough council, and when he rested his case there was no evidence, certainly none of a positive nature, that it was made by any one having any connection with the borough government. The defendant then showed that it was made by one William Oliver, whose sister owned the property in which the new channel was dug. The plaintiff intimated that the change was made for the benefit of that property. "Well they changed it," he says, "to keep it from coming down through under their property." Oliver testified that he, to quote his exact language, "had three teams at the time doing a great deal of hauling, and to get over the stream this box was put in." It is true he was a member of the street committee of the borough council at the time, but his testimony that he was not authorized by any one connected with the borough government to do the work, and did not even talk to the members of his committee about it, is uncontradicted. He took the responsibility on himself and made the change to serve his own, or at least, private purposes. On general principles it is necessary, in order to make a municipal corporation impliedly liable on the maxim respondeat superior for the wrongful act of an officer, that it be shown that he was its officer either generally or as respects the particular wrong complained of; and also that the wrong was done by such officer while in the legitimate exercise of some duty or power of a corporate nature which was devolved on him by law or by the direction or authority of the corporation. 2 Dill. Mun. Corp. sec. 974. It is too plain for argument that it is not within the scope of the authority of a single member of a borough council, although he may also be a member of the street committee, to act for the borough in such a matter as this. The liability of the borough must be placed on some other ground than that Mr. Oliver was its servant or agent, and that his act was its act.

Is the borough liable upon the principle that a ratification is equivalent to previous authority and relates back to the time of the performance of the act in question? We do not assert that a municipal corporation may not adopt or ratify a wrong done

in its behalf by one not its agent, and thereby become liable as if it had directed it. Passing without further comment the question whether this wrong was done in behalf of the borough, it is well settled in the law of master and servant that ratification can only be inferred from acts which evince clearly and unequivocally the intention to ratify and not from acts which may be readily and satisfactorily explained without involving such intention. This principle applies with increased force to a case where ratification or adoption of the act in question is urged as a ground upon which to hold a municipal corporation liable for a tort committed by one not its agent. As we have shown, the borough neither gave direction, nor granted permission, to divert this water course from its natural channel, nor, so far as appears, did its street commissioner do any act after it had been diverted by Oliver which tended in the slightest degree to continue or maintain the diversion. All that he did was calculated to mitigate the consequent injury, not to perpetuate it. The cause of action, as set forth in the plaintiff's statement, was not that the means adopted by the borough to keep the water from injuring his premises were inadequate, and it is doubtful whether an action could be maintained upon that ground, if the borough was in no way responsible for the existing conditions these acts were intended to remedy. See Gift v. Reading, 3 Pa. Superior Ct. 359, 364, Sullivan v. Pittsburg, 5 Pa. Superior Ct. 357, and Bealafeld v. Verona Borough, 188 Pa. 627. There remains, then, simply, the failure of the borough to compel a restoration of the stream to its natural channel. This, of itself, was not such evidence of an adoption or ratification of the wrong as would make the borough liable as a trespasser ab initio. It follows that the defendant's second point should have been affirmed. There is a wide difference between the commission of an act, which, whether committed by a municipal corporation or by a private person, would be an actionable nuisance, and the mere failure of the corporation to exercise its charter power to abate nuisances, not rendering its streets unsafe, and for the creation of which it was in nowise responsible: 2 Dill. Mun. Corp. sec. 951; McDade v. Chester, 117 Pa. 414.

The judgment is reversed.