# Wanamaker *v.* Benzon, Appellant.

*Sewers—Covered stream—Dedication—Borough — Pollution of waters—Injunction—Equity—Laches—Remedy at law.*

Where the owners of a building operation lay out a tract of land in building lots and streets, construct a culvert or stone covering over a stream, run a street along the same course as the stream naturally took, dedicate this street to a borough, and the borough accepts the street, the fact that the borough subsequently

makes several openings in the covered drain for the purpose of drainage, does not indicate that the borough adopted the drain as a borough sewer so as to make the borough liable to a lower riparian owner for the pollution of the stream by offensive sewage cast into it by individual lot owners.

In such a case the lower riparian owners may maintain a bill in equity against the individual lot owners for an injunction to restrain the further pollution of the stream; and they are not barred by laches because they delayed for several years in asserting their right; nor is the court's jurisdiction ousted because the State Health Commission had directed the borough to build a sewer across the plaintiff's land for general drainage, where there is nothing to show that such order had ever been put into execution by the borough. The plaintiffs in such a situation have no adequate remedy at law, and are entitled to an injunction to prevent the further pollution of the stream.

Argued Dec. 9, 1915.  Appeal, No. 340, Oct. T., 1915, by defendant, from decree of C. P. Montgomery Co., Dec. T., 1914, No. 5, awarding an injunction in case of Mary B. Wanamaker and Rodman Wanamaker v. Alma C. Y. Benzon.  Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.  Affirmed.

Bill in equity for an injunction.  Before SWARTZ, P. J.

From the record it appeared that the plaintiffs filed the present bill and twenty-nine other separate bills against various landowners praying for a mandatory injunction for the discontinuance of the use of a covered stream as a sewer under Mather avenue in the Borough of Jenkintown, for other than surface drainage.  The answer in this case and in twenty-nine others denied liability.  By stipulation filed it was agreed that such final decree as should be entered in the present case by the appellate court should be entered in all the other twenty-nine cases.  The facts are stated in the opinion of the Superior Court.

The court entered a decree awarding an injunction.

401, (1916).]    Assignment of Error—Arguments.

*Error assigned* was the decree of the court.

*Harvey Gourley,* with him *Owen J. Roberts,* for appellant.—The proof is clear that the borough owns and uses the sewer in Mather avenue and is alone responsible for the drainage which passes through it. Defendant and other citizens of the borough are within their rights in using the sewer: Wood v. McGrath, 150 Pa. 451; Blizzard v. Danville Borough, 175 Pa. 479; Glasgow v. Altoona, 27 Pa. Superior Ct. 55; Cumberland v. Vale, 18 Pa. Superior Ct. 501.

The construction of inlets to the sewer is evidence of its adoption by the borough for municipal drainage.

If the borough is answerable for its street drainage, it must necessarily be responsible for any contribution thereto from the dwellings of its citizens: Haus v. Bethlehem Borough, 134 Pa. 12.

The plaintiffs' laches bar equitable remedy to have the stream freed from pollution.

The action of the commissioner of the State health department is such as ought to lead the court to refuse relief in favor of the plaintiffs: Com. v. Yost, 11 Pa. Superior 341.

The alleged nuisance can be abated and plaintiffs' damage for such abatement be easily ascertained by the construction and maintenance of an appropriate sewer across their land in place of the present basin and three iron pipes.

*Samuel H. High* and *Nicholas H. Larzelere,* with them *William L. Nevin,* for appellees.—Not even a municipality has the right to corrupt a stream of water by emptying fecal matter into it: Albertson v. Philadelphia, 12 W. N. C. 158; Martin v. Philadelphia, 26 W. N. C. 120.

Plaintiff's rights have not been lost by laches.

OPINION BY TREXLER, J., July 18, 1916:

The facts in the case are not in dispute. There was a small water course fed by a spring which passed over the property of the plaintiffs and discharged into Tacony creek. Above the plaintiffs' property a syndicate purchased land, divided it into lots and upon these lots houses were erected which drained waste, including human excrement into the stream. About fifty houses so discharged their sewage into the water courses. The stream was covered and was included in a street known as Mather Road. The filth collected in the watercourse was carried to the land of the plaintiffs where the stream flowed into an open catch basin and produced noxious odors which threatened the health of the occupants of plaintiffs' ground, and in times of rain the objectionable waste was deposited on plaintiffs' lawn. In the language of the lower court, it caused "a continuing private nuisance on the plaintiffs' property, and along the whole line of the water-course." It seriously interfered with the plaintiffs' enjoyment of their property, and was a source of discomfort and danger. The plaintiffs are not seeking damages for any injury occasioned but are seeking to prevent a continuance of the nuisance.

There are four reasons set forth by the defendant why the court should not have granted the relief prayed for.

First: It is contended that the Borough of Jenkintown adopted the covered watercourse and it thus became a borough sewer and the borough alone is therefore liable for the wrong done. As stated above the waterway was covered over by the syndicate which owned and sold the lots. It constructed a culvert or stone covering over the stream and ran a street along the same course as the stream naturally took, and dedicated this street to the borough, and the borough accepted the street. The borough made several openings in the covered drain for the purpose of surface drainage. Did this act of the borough charge it with responsibility for the underground conduit so as to render it liable for the act of

the defendant in draining animal waste into it? The borough never adopted the underground stream as part of its sewerage system. In fact, in the entire borough the ordinary method of disposing of sewage was by means of cesspools. The conduit in question was not built or constructed by the borough, and the borough never exercised any control or supervision over it. The stream of water that passes through the covered watercourse would naturally be augmented at times by surface water. Where the borough drained surface water into this conduit, it was merely putting the water to the place where it would have naturally gone. We cannot see that by this action the borough became responsible for the act of the defendant in the depositing of sewage into it. Had this been allowed to remain as an open waterway, the borough could have drained the street into it without thereby becoming responsible for its pollution by a private citizen. The court found that there was no evidence that the borough adopted this underground course as a sewer. Were it not for the act of the defendant and others polluting the stream, there would be nothing passing through the pipe excepting the water of the spring and the surface water which would naturally be conveyed through the pipe. Originally the stream followed the line of the street under which the water now runs, and the stream though small was never failing. As the defendant with others is directly responsible for the pollution of this stream, unless compelled by the facts, we would not shift the responsibility of the defendant onto the borough, nor can we disturb the finding of the learned trial judge that "under the facts, the enclosed water course under Mather Road is not a sewer of the Borough of Jenkintown." There is nothing that the borough has done that has contributed to the damage complained of. Under the Act of April 22, 1905, P. L. 260, the borough could not make the stream a public sewer without the consent of the commissioner of health. Whether the borough has increased

the flow of surface water into this channel by increasing the area of land which would not naturally drain into it, is apart from the present inquiry.

Second: Are the plaintiffs barred by laches? The pollution of the stream was gradual. The plaintiffs submitted for several years but the conditions gradually grew worse, and in 1912 suits against ten offenders were instituted. This action was notice that any seeming acquiescense by the plaintiffs was at an end. As was said in Hansell v. Downing, 17 Pa. Superior Ct. 235, "Laches is not to be imputed to a party from the mere lapse of time alone; it is implied waiver, arising from knowledge of existing conditions and an acquiescence in them. The question is one involving equitable principles and is determinable from the particular facts in each case." The court below came to the conclusion that no laches could be imputed to the plaintiffs. When the water course was inclosed, they were not required to anticipate that an improper use would be made of the construction. They had the right to assume that it would be used to carry surface drainage; that to carry out the land development the conduit would have to be constructed irrespective of whether the houses were to be drained into it or not. "Nor is it likely that the dwellings would not have been erected except for the sewer. The greater part of the borough is still dependent upon cesspools." Certainly the court was right in holding that there was nothing in the case which would give the defendant the right to continue the nuisance complained of. There was no such delay on the part of the plaintiffs as would give the defendant the right to continue to menace the health of the occupants of plaintiffs' dwelling by depositing filth in the stream.

Third: It is contended that the State health commission having directed the borough to build a sewer across the plaintiffs' land for general drainage, thereby signifying the intention to abate the nuisance, ousted the jurisdiction of the court of equity against individual citi-

zens of the borough. In other words, that the object of the bill being accomplished through the action of the State, there is no reason for the present act. Nothing that the Department of Health can do would deprive these riparian owners of their right to protect the stream. If the borough enters upon their land and constructs a sewer and abates the nuisance, that is a matter not involved in the present case. It may well be urged that a court of equity would not direct the defendant to do a useless thing and compel her to discontinue the polluting of the stream after the plaintiffs were put in such a position by change of circumstances that no harm would be occasioned to them, but there was no evidence before the court that the order of the State Department was ever put into execution by the borough. In fact the evidence is that the construction of the sewer system by the Borough of Jenkintown was delayed by reason of the fact that it was believed that the borough and the adjoining township would cooperate in a joint means of depositing sewage. It would not do to ask these plaintiffs to continue to submit to this nuisance relying upon the prospect that some time in the future the nuisance would be abated by means other than those that are sought to be put into force under the prayer of the bill.

Fourth: The last question is whether the damages to the plaintiffs can be ascertained so as to give them an adequate remedy at law. The wrong done to the plaintiffs is in the nature of a continuing trespass. It is true they might cover the stream through their land, but it is not incumbent upon the plaintiffs to furnish a sewer to accommodate others. They were entitled to enjoy their property in the way they wished. If a sewer is to be put across their land, the Borough of Jenkintown is the party who would construct it, and the damages for such taking of the land of the plaintiffs would be ascertained in another proceeding. The damage flowing from the continuance of this nuisance cannot be ascertained in dollars and cents. It affects the plaintiffs in ways which

are not subject to any monetary standard, and as long as the nuisance continues, the damages of the plaintiffs are in the legal sense of the word irreparable.

We think under all the facts as presented, the conclusion of the lower court is right.

Assignments of error are overruled, and the judgment is affirmed.