## Sewage in Second Class Townships

GAFFORD, Deputy Attorney General, September 11, 1947.—This department is in receipt of your communication reinstating a former request for an opinion as to whether the Sanitary Water Board has the authority to require the supervisors of a second class township, the population of which discharges sewage into the waters of the Commonwealth, to abate such discharge or to submit for the approval of the board plans for the construction of sewers or a sewer system and a sewage disposal works or a plant for the treatment of such sewage. In the latter instance, it would follow that after the approval of the submitted plans, the board would issue a subsequent order to such supervisors either to construct the sewer system and the plant called for by the plans designed to render the discharge of such sewage innocuous or to abate the discharge. It is our understanding that the sewers of the second class townships discharging sewage into the waters of the Commonwealth to which you refer are not municipal sewers but are private sewerage systems which fall into three general categories: (a) those which are laid under the surface but in or across township thoroughfares or township property; (b) those which are laid under the surface but in and

across State highways and which may not lie in or across township thoroughfares or township property; and (c) those which are laid in private property from the point of origin to the point of discharge.

The Sanitary Water Board was created by section 202 of The Administrative Code of June 7, 1923, P. L. 498, as amended, 71 PS §12, as a departmental administrative board within the Department of Health. The board was continued under the corresponding section of The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §62.

Under the recent amendment to section 439 of The Administrative Code of 1929, by the Act of May 2, 1947 (no. 65), H. B. no. 1016, the board now consists of seven members including the Secretary of Health, the Secretary of Forests and Waters, the Secretary of Mines, the Commissioner of Fisheries and three appointive members. Certain powers and duties relating to the study of the means to eliminate pollution of the waters of the Commonwealth, the adoption of rules and regulations in conformity with existing laws prohibiting such pollution, the exercise of powers previously exercised by the "former Department of Fisheries, the former Commissioner of Fisheries and the former Water Supply Commission of Pennsylvania" to prevent such pollution, and the exercise of all powers which were formerly exercised by the Department of Health or the "Commissioner (now Secretary) of Health" with regard to the granting of permits for the construction of sewage disposal plants and sewer systems were vested in the board by section 2110 of the same code, as amended by the Act of June 21, 1937, P. L. 1865, 71 PS §540. The Department of Health is specifically charged with the duty of acting as the enforcement agent of the board (section 2109 of the code, supra, 71 PS §539) and the board may call upon that department to do such "acts as may be

necessary and proper in the exercise of the powers and the performance of the duties of the board": sec. 2110($g$) of the code, supra, 71 PS §540($g$).

The general statute concerning anti-pollution, which has been frequently referred to as the "Pure Streams Law", is the Act of June 22, 1937, P. L. 1987, as amended by the Act of May 8, 1945, P. L. 435, 35 PS §691.1 et seq. The pollution of the waters of the Commonwealth by the discharge therein of sewage, industrial waste, or any noxious and deleterious substance which is or may become inimical and injurious to the public health, or to animal or aquatic life, or to the uses of such waters for domestic, industrial or recreational purposes is declared in section 3 of the act, 35 PS §691.3, to be against public policy and to constitute a public nuisance. Under the provisions of the statute the Sanitary Water Board is charged with the important duty of protecting the Commonwealth's waters from pollution and, in turn, has conferred upon it great powers to regulate the same or to abate any nuisance resulting therefrom: Sanitary Water Board Records, 36 D. & C. 27 (1939).

Judicial recognition has long been taken of the fact that the drainage of untreated sewage into any flowing stream is a menace to public health. The reason was clearly stated by the Supreme Court of Pennsylvania in Commonwealth v. Kennedy, 240 Pa. 214, 219 (1913), as follows:

"Because sewage is the most efficient medium for the dissemination of infecting germs which do their deadly work in such an infinite variety of insidious ways, not at all dependent upon free access of the public to the stream which the germs pollute, it cannot be said that the 'riparian owners alone have an interest in the stream'. When this deleterious substance pollutes any running stream the public health is endangered thereby."

The legislature's presently applicable enactment on the subject is the Act of June 22, 1937, P. L. 1987, 35 PS §691.1 et seq. Inasmuch as the amendatory Act of May 8, 1945, P. L. 435, makes no change in the original act with reference to sewage pollution, and in the absence of any duty imposed by any other statute on the supervisors of second class townships to abate the discharge of sewage into the Commonwealth's waters caused by private persons through private sewer lines or to comply with orders of the Sanitary Water Board with respect thereto (which will be hereafter considered), it is the interpretation of the provisions of the 1937 act that is here controlling.

An analytical consideration of the provisions of the Act of June 22, 1937, P. L. 1987, supra, 35 PS §691.1 et seq., discloses that there was a manifest intent on the part of the legislature to carefully designate those provisions applicable to "municipalities" and those applicable to "persons".

Section 201 of the act, 35 PS §691.201, flatly prohibits either persons or municipalities from discharging any sewage into any of the waters of the Commonwealth except as provided in the act. Section 202, 35 PS §691.202, requires any municipality discharging sewage "from any sewer system owned and maintained by the municipality" and any person discharging sewage into waters of the Commonwealth, or in such a manner as to cause pollution thereof, to discontinue such discharge upon the order of the Sanitary Water Board at such time as the board shall be of opinion that the discharge is or may become inimical or injurious to the public health, animal or aquatic life, or to the use of the water for domestic, industrial or recreational purposes.

Section 203 of the act, 35 PS §691.203, provides that orders of the board to discontinue existing discharges of sewage, in the case of a municipality, shall be by

written notice, after investigation and hearing and an opportunity for all persons interested to be heard, which notice shall be served personally or by registered mail on the corporate authorities of the municipality "owning or maintaining and using the sewage system". The same section of the act provides that an order of the board directed to a person to discontinue existing discharges of sewage shall be by written notice served on such person but does not set forth any requirement for a prior hearing. Such order, whether against a municipality or a person, must specify the time within which the offending discharge shall be discontinued, which in the case of a municipality shall not exceed two years and in that of a person one year. Section 204 of the act, 35 PS §691.204, prescribes the penalty to be imposed upon persons, convicted in summary proceedings, who continue to discharge sewage contrary to the act or after the time fixed in the notice of the board for discontinuance. Municipal officers are not designated in this section.

Section 205 of the act, 35 PS §691.205, requires the corporate authorities having "charge of the sewer system of each municipality" from which sewage is discharged into the Commonwealth's waters to file reports with the board from time to time as the board may require. Under this same section of the act it is declared that "no municipal sewer system" shall be exempt from the provisions of the act for which a satisfactory report shall not be filed. It is further declared that the continued discharge of sewage "from any such sewer system" without the filing of such reports constitutes a nuisance and is abatable as such.

Section 206 of the act, 35 PS §691.206, provides that upon application made to the board by the "corporate authorities having by law the charge of the sewer system of any municipality", otherwise prohibited by the act from discharging sewage into the waters of the

Commonwealth, the board may permit such discharge under stipulated conditions provided it finds said discharge necessary and not injurious to the public health or to animal or aquatic life, or to domestic, industrial or recreational uses. The section also provides that a similar application may be submitted by persons.

Section 207 of the act, 35 PS §691.207, provides that all plans for the construction or extension of a sewer system "by a municipality" or for the construction of treatment works or intercepting sewers "by a person or municipality" shall be approved by the board prior to construction.

Section 208 of the act, 35 PS §691.208, provides for the revocation or modification of permits issued by the board for the discharge of sewage from a sewer system or for the construction of a sewer system or treatment works after investigation and hearing and upon due notice served on the "corporate authorities of the municipality or the person owning, maintaining or using the sewer system, or the person or municipality operating the treatment works". Such notice shall state the time when the discharge or inadequate treatment of such sewage shall be discontinued which shall not exceed "two years in the case of a municipality, or a reasonable time, not exceeding one year, in the case of a person".

Section 210 of the act, 35 PS §691.210, provides that whenever the board serves an order upon a municipality to abate "its discharge of untreated or inadequately treated sewage" which is not reversed on appeal, such municipality shall take steps for the acquisition, construction, alteration, repair, extension or completion of a sewerage system or sewage treatment works or both, "as may be necessary for the treatment of its sewage" in compliance with such order.

Section 302 of the act, 35 PS §691.302, relates to the discharge of industrial wastes, as differentiated from sewage, into the Commonwealth's waters. It provides that after due investigation by the board and a declaration that such discharge is or may become inimical and injurious to the public health, to animal or aquatic life, or to the use of the waters for domestic, industrial or recreational purposes, the board may order any person to discontinue the discharge of such industrial wastes into said waters or "into any municipal sewer system". Section 306 of the act, 35 PS §691.306, forbids either a "municipality or person" to discharge into the clean waters of the Commonwealth any sewage or industrial waste.

Section 606 of the act, 35 PS §691.606, provides that notwithstanding the pollution of the waters of the State by other sources, nothing contained in existing law of the Commonwealth shall estop the board from proceeding under the act against "any particular municipality or person" discharging polluting substances into said waters.

All of the foregoing statutory provisions, considered as a whole, impel us to the conclusion that there was no intent on the part of the legislature to impose upon municipalities the responsibility for the pollution of the State's waters by private persons discharging sewage into said waters through private sewer lines. It is immaterial whether such private sewer lines lie wholly in private property, or partly in township property, or run beneath township or State thoroughfares, for it is the persons causing the unauthorized discharge in the manner indicated who alone are made responsible by the statute for the pollution. By its very terms the act imposes liability for such offending discharges upon a municipality only when it is the municipality which "owns and maintains", or "owning, maintaining and using" the particular sewer system or whose cor-

porate authorities have by law "charge of the sewer system" which causes the pollution.

A like result was reached in a judicial consideration of previous statutory provisions relating to the discharge of sewage into the waters of the State and embodied in the statute known as the "Purity of Waters Act" of April 22, 1905, P. L. 260, secs. 4 to 11 inclusive, now superseded by the Act of June 22, 1937, P. L. 1987, supra, and specifically repealed by section 801, 35 PS §691.801, of the latter act. With respect to the prior act, the Supreme Court of Pennsylvania adopted the opinion of the Superior Court in Commonwealth v. Emmers, 221 Pa. 298 (1908), wherein it is stated as follows (p. 310):

"These *public sewer systems* and the house drains which lead into them have by the legislation of the state been made subject to the regulation, inspection and control of the municipalities, and the duty of exercising such supervision has been imposed upon the municipal authorities." (Italics supplied.)

In this connection it should be also noted that when a municipality does own and maintain a sewer system it does so in its proprietary capacity and not in its governmental cacapity. As stated by the Supreme Court of Pennsylvania in Hamilton's Appeal, 340 Pa. 17, 20 (1940):

" 'The construction, operation, or maintenance of sewer systems, water systems and gas systems by a municipal corporation is in the nature of a private enterprise. A municipality is not required to construct, own, or operate such public utilities.' "

Similarly, we find nothing in the provisions of The Second Class Township Law of May 1, 1933, P. L. 103, 53 PS §19093-101 et seq., which was reënacted, amended and revised by the last session of the legislature as the Act of July 10, 1947 (no. 567), and en-

titled "The Second Class Township Code", which would impose upon the supervisors of such municipalities the duty to abate or to submit to the Sanitary Water Board plans calling for the construction of sewers or treatment plants, or both, which when constructed would bring about the abatement of pollution of the State's waters caused by the discharge of untreated sewage into such waters, not by municipal sewerage systems, but by private sewers. It is true that under section 31 of the code, which reënacts and amends section 1501 of the former act (53 PS §19093-1501) such supervisors are vested with the authority to construct sewer systems for that section provides, in part, as follows:

"Townships may establish and construct a system of sewers and drainage, locating the same as far as practicable along and within the lines of the public roads of the townships as seems advisable to the board of supervisors. The supervisors may permit and, where necessary for the public health, require adjoining and adjacent property owners to connect with and use the same. . . ."

However, the mere grant of authority to a municipal corporation to construct sewers does not amount to the imposition of a duty to do it: Carr v. The Northern Liberties, 35 Pa. 324, 330 (1860). It is only where a person has a right to demand the exercise of a public function, and authority, which is not discretionary in character, is vested in an officer or set of officers to exercise that function, that the right and the authority give rise to a duty: Carr v. The Northern Liberties, idem.

It is also true that section 9 of the code, supra, which reënacts and amends section 702 (XII) of The Sécond Class Township Law, 53 PS §19093-702 (XII), empowers the supervisors of such municipalities to prohibit nuisances and authorizes them "to remove any nuisance . . . on public or private grounds after notice to the owner to do so". However, in the absence of

an appropriate ordinance on the subject, a municipality is under no duty to abate a nuisance for which it is in nowise responsible, although it may be authorized by statute to abate the same. As was stated by the Superior Court of Pennsylvania in Allebrand v. Borough of Duquesne, 11 Pa. Superior Ct. 218, 223 (1899) :

"There is a wide difference between the commission of an act, which, whether committed by a municipal corporation or by a private person, would be an actionable nuisance, and the mere failure of the corporation to exercise its charter power to abate nuisances, not rendering its streets unsafe, and for the creation of which it was nowise responsible: 2 Dill. Mun. Corp. Sec. 951; McDade v. Chester, 117 Pa. 414."

See also Martinowsky v. City of Hannibal, 35 Mo. App. 70 (1889) ; St. Albans v. Noble, 56 Vt. 525 (1884) ; Crystal Spring Brook Trout Hatchery Co. v. Lomira, 165 Wis. 515, 162 N. W. 658 (1917) ; Wilson v. City of Ottumwa, 181 Iowa 303, 164 N. W. 613 (1917), and 19 R. C. L. 1102, §385.

The case of Commonwealth ex rel. v. Borough of Dravosburg, 38 Mun. L. R. 169 (1947), which is referred to in your request for advice, is not, by reason of its factual differences, applicable to the question before us. In that case an individual developer of land induced the municipality to apply to the Sanitary Water Board for a sewerage permit for a tract of land on which he was engaged in building houses. The board issued the permit to the borough to construct the sewer system in accordance with the plans which the individual developer, as agent for the borough, had prepared and submitted to the board. The developer finished the building project but left the sewerage system uncompleted. The court awarded a mandatory injunction against the borough directing it to complete the sewer system in compliance with the permit

issued to it, and ordered that the developer reimburse the borough for the costs of completing the work. In the question here presented to us, the second class townships have not applied to the board for permits, nor have permits been issued, to allow private persons to discharge sewage through presently existing private sewer lines. On the contrary, these persons are using these lines and effecting unauthorized discharges without permits.

Of greater weight in the situation before us is the case of Wanamaker v. Benzon, 63 Pa. Superior Ct. 401 (1916). In that case a syndicate purchased land and built houses thereon from which sewage was discharged into a covered stream which ran under a street in the Borough of Jenkintown. The street was dedicated to and accepted by the municipality. The borough cut openings into the covered drain to provide for surface drainage. It was contended that the mandatory injunction sought by a lower riparian owner against the upper proprietors to discontinue the use of the covered stream as a sewer was improper and that the action should have been brought against the borough on the ground that the sewer was a borough sewer. However, the Superior Court rejected this contention, refused to hold the municipality liable for the pollution, and sustained the injunction awarded against the individual defendants. The court's reasoning is set forth, in part, as follows (p. 405):

"The borough never adopted the underground stream as part of its sewerage system. In fact, in the entire borough the ordinary method of disposing of sewage was by means of cesspools. The conduit in question was not built or constructed by the borough, and the borough never exercised any control or supervision over it. The stream of water that passes through the covered watercourse would naturally be augmented at times by surface water. Where the borough drained surface water into this conduit, it was merely putting

the water to the place where it would have naturally gone. We cannot see that by this action the borough became responsible for the act of the defendant in the depositing of sewage into it. . . . As the defendant with others is directly responsible for the pollution of this stream, unless compelled by the facts, we would not shift the responsibility of the defendant onto the borough, nor can we disturb the finding of the learned trial judge that 'under the facts, the enclosed water course under Mather Road is not a sewer of the Borough of Jenkintown.' There is nothing that the borough has done that has contributed to the damage complained of."

We are, therefore, of the opinion and you are accordingly advised that the Sanitary Water Board has no authority to require supervisors of second class townships to abate the pollution of the waters of the Commonwealth caused by the discharge of sewage therein by private persons through private sewer lines —irrespective of whether said lines lie wholly in private property, partly in township property, or under State highways or township thoroughfares—or to require such supervisors to submit plans to the board with the ultimate view that the board will subsequently order the construction of a sewerage system or treatment works, or both, in accordance with such plans when approved by the board, in order, in that manner, to bring about the abatement of the discharge of such untreated sewage. Although section 701 of the Act of June 22, 1937, P. L. 1987, 35 PS §691.701, provides that the remedies prescribed in the act to abate pollution are not exclusive, it would be necessary, nonetheless, that any proceeding taken by the board on any cause of action arising by reason of any pollution of the character such as is herein considered be instituted against the person or persons responsible therefor.