# Rohrer *v.* Harrisburg, Appellant.

*Road law—Waters—Diversion of waters—Municipalities.*

A municipal corporation diverting the flow of surface water so that it accumulates and flows upon abutting property where it would not flow naturally is liable to the abutting owner in damages for the resulting injury.

Where the supervisors of a township for a period of thirty years maintain a drain or gutter alongside of and within the limits of a public road, and this drain is necessary for the preservation of the road, and the portion of the township in which the road lies is annexed to a city, and thereafter the city constructs a path across the road so as to dam up the drain or gutter, and to throw the water from the road on to the lands adjoining, the city is liable for the injury to the land.

Argued March 12, 1902. Appeal, No. 15, March T., 1902, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1900, No. 80, on verdict for plaintiff in case of A. Edward Rohrer v. City of Harrisburg. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to real estate. Before SIMONTON, P. J.

At the trial it appeared that plaintiff claimed to recover damages for injuries to real estate by reason of the diversion of water on to it from Fifth street, Harrisburg.

When Jacob Hummel was on the stand, the following offer was made :

Mr. Hargest : We propose to prove by the witness on the stand that he was supervisor, as he has said, and that as supervisor and from his acquaintance with Fifth street, over what is now Fifth street in the city of Harrisburg, he maintained and kept open and knew of the existence of a gutter on the upper side of Fifth street up to the time it was brought into the city of Harrisburg; to be followed by proof that the gutter has been obliterated and the water thus carried in that way thrown upon the plaintiff ; for the purpose of showing the turning of the water upon the plaintiff.

Mr. Seitz : This is objected to, if the court please, for the reason that even though the supervisor of Susquehanna town-

544        ROHRER v. HARRISBURG, Appellant.

Statement of Facts—Assignment of Errors. [20 Pa. Superior Ct.

ship may have constructed and maintained a gutter on the eastern side of Fifth street or the road that is now known as Fifth street,.for the purposes indicated in the offer, he did that merely as a voluntary or gratuitous act, and not because it was his official duty to do so under the law; therefore, it is irrelevant, incompetent and inadmissible.

Mr. Hargest: We propose to show that as supervisor of the township he did it officially as supervisor, because otherwise he could not have carried off the water, and also to show that there was a gutter existing there.

The Court: I do not suppose that we can determine the liabilities at this stage of the case ; we must get the facts first as I understand.

Mr. Seitz : If the court please, I say there is no cause of action here so far as this point is concerned.

The Court: We will have to hear the evidence at any rate before we can tell whether there is liability or not. Note an exception for the defendant. We must hear the evidence and determine whether it makes out a liability or not ; we cannot decide it at this preliminary stage.

" Q. How long has it been there? A. Ever since I was supervisor. Q. When were you first supervisor ? "

Mr. Seitz : If the court please, I desire to know the purpose of asking the length of time this was constructed. If it is claimed that there is any right by prescription, I want an objection noted.

Mr. Hargest: If we can show it far enough back.

Mr. Seitz : That is objected to as being irrelevant, incompetent and inadmissible, no right of prescription can be set up against the public.

The court: In order intelligently to pass upon the legal questions involved in this case, we must know the facts, and we will receive the evidence and determine afterwards whether it imputes a liability ; if it does not, we will so instruct the jury and if it does, we will leave the fact to be found by the jury. Exception noted for defendant. [2]

Verdict and judgment for plaintiff for $550. Defendant appealed.

*Errors assigned* among others were (1, 2) rulings on evi-

dence, quoting the bill of exceptions. (3-7) Various instructions.

*Daniel S. Seitz,* for appellant.—If the farmers and township supervisors used the public road "as the watershed for all the land sloping thereto on the eastern side thereof for thirty years," as declared in plaintiff's statement, they had no right to so use it: Martin v. Riddle, 26 Pa. 415.

It is well settled law that public rights are not destroyed by long-continued encroachments or permissive trespasses: Com. v. Moorehead, 118 Pa. 344; McCallum v. Germantown Water Co., 54 Pa. 40; Com. v. Yost, 11 Pa. Superior Ct. 323.

Almost the whole law of water courses is founded on the maxim of the common law, aqua currit et debet currere. Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow on it: Kauffman v. Griesemer, 26 Pa. 413; Martin v. Riddle, 26 Pa. 415; Meixell v. Morgan, 149 Pa. 415; Scranton City's Appeal, 121 Pa. 97; Rhoads v. Davidheiser, 133 Pa. 226; Penna. Coal Co. v. Sanderson, 113 Pa. 126.

*W. M. Hargest,* of *Hargest & Hargest,* for appellee, cited: Betham v. Philadelphia, 196 Pa. 302; Torrey v. Scranton, 133 Pa. 173; Weir v. Plymouth Borough, 148 Pa. 566; Bohan v. Avoca Borough, 154 Pa. 404; Frederick v. Lansdale Borough, 156 Pa. 613; Elliott v. Oil City, 129 Pa. 570.

OPINION BY ORLADY, J., July 10, 1902:

In 1896, the city of Harrisburg extended its boundary lines by including therein a part of Susquehanna township, which is now known as the tenth ward. Within this newly acquired territory there was a township road on the line or continuation of one of the city streets, known as Fifth street, and the township road became a part of Fifth street thereafter. This township road is spoken of as having been in existence "long before said territory became a part of the city," "from time immemorial," and is mentioned by the witnesses as having been in actual existence since 1871. The road was constructed along a slope or hillside, on the upper side of which there had origi-

nally been constructed and subsequently maintained by the township supervisors a gutter or drain to receive and carry away the surface water falling on adjoining lands and to conduct it to a natural drain or outlet which it intersected and thence to the Susquehanna river. The plaintiff complains that after this territory became a part of the city the municipal officers " carelessly and negligently caused the said drain to be clogged, filled and entirely obliterated, so that the rainfall formerly conducted by said gutter along Fifth street was cast and directed upon the land of the said plaintiff," and that the said city at one or more points along Fifth street built across the street a crossing or cinder path, so that the rainfall formerly taken by the gutter which came to that point was diverted and thrown upon the property of plaintiff.

The question involved, as presented by the appellant, does not cover the whole cause of action as exhibited in the pleadings. It contends that the testimony admitted under the first assignment of error was irrelevant for the reason that in the statement it was alleged that " the road where Fifth street now is had been used by the farmers and township supervisors as the watershed for all the land sloping thereto on the eastern side thereof, and for a long period of years a drain was constructed and maintained to conduct said water along the eastern side of said street to the low ground above plaintiff's property and this to protect the property now belonging to plaintiff and others from being flooded during heavy rains," and that the act of the supervisor in constructing and maintaining the ditch or gutter on Fifth street for the purpose suggested in the statement was a mere voluntary and gratuitous act and not because it was his official duty to do so under the law.

The objection is not well taken, as both preceding and subsequent testimony showed that the gutter or ditch was constructed and maintained by the supervisors of the township, and that there was no other way of conducting the water along the slope in order to protect the roadbed proper from erosion by surface water. The statement further declared a principal cause of injury to be the building of a crossing over the roadway, by which the water was diverted from its natural course and thrown upon the plaintiff's property. The evidence on this phase of the case was received by the court, subject to further

proof being adduced in support of the offer, and was finally admitted with the other evidence in the case and was held sufficient to submit to the jury to determine whether or not the city had directly caused the surface water to be thrown upon the premises of the plaintiff to his injury, and was as follows : " Did what was done by the city at that place cause the water to flow on the premises of the defendant ?  Did it obstruct its flow as it formerly was ?  So far as this case is concerned we assume, gentlemen, and instruct you that the city is not liable simply for not doing anything.  If the city had left that Fifth street just as it was when it came into the city and had not done anything there and the water had come into the plaintiff's premises, he could not have complained of the city ; he could not have recovered of the city for that ; but, if the city did something there, the effect of which was to throw the water on the plaintiff's premises, then we instruct you that he has a right to recover for that.  And that is the distinction that is to be made in this case ; between the city simply not doing anything and doing affirmatively that which caused the damage ; and we instruct you that if by something that the city did negligently or carelessly the water was caused to flow upon the premises of the plaintiff and did damage, for that the city would be liable."

Under all the evidence in the case, the court below was clearly right in holding that the construction and maintenance of the ditch as described was properly done by the township supervisors, as it was within the lines of the roadway and was necessary to preserve the integrity of the roadbed for public travel.  It was not a mere convenience of adjoining landowners to discharge the natural drainage of the surface upon the side of the highway and to relieve the lands bordering upon them from the burden to which they were naturally servient. The necessity for its maintenance had been recognized by the supervisors of roads for over thirty years.  The first and second assignments of error are overruled.

The affirmative action of the city referred to by the court was shown by several witnesses to consist of the building of a cinder walk or path four feet wide and about twelve inches high across Fifth street, which prevented the water from going down the channel on the upper side of the street, damming it up and forcing it across the street upon the property of the

plaintiff. The manifest effect of such an obstruction to flowing water would be apparent, and it was the duty of the city to allow the water to flow in the channel which had been provided by the township supervisors and recognized in over thirty years of use as necessary or else to make some other suitable provision for it without injury to private property.

The verdict shows, and it is fully warranted by the evidence, that the damage done to the plaintiff's premises was not the result of extraordinary rainfall or unusual flood. While under exceptional circumstances the ditch was not of sufficient size to carry away the whole flow of water falling on the adjoining territory, some of the excess passing over the road and upon the plaintiff's premises, it was purely a question for the jury to say whether the damage was caused by the unusual and extraordinary flow of water diverted by the city authorities from the channel.

A municipal corporation diverting the flow of surface water so that it accumulates and flows upon abutting property where it would not flow naturally is liable to the abutting owner in damages for the resulting injury: Torrey v. Scranton, 133 Pa. 173.

The city accepted the annexed territory and its roads in the condition in which they were at the time of annexation. The means provided for carrying off the surface water collecting on the street, although not natural water courses, had at least the weight of long continued sanction of local officials in deciding what was necessary to preserve the highways, and when these means were destroyed and the natural course of the water collecting on the street was diverted by crossings or ditches, thereby throwing it on the land of a private owner, it was for the jury to say whether it was carelessly or negligently done.

It was held in Weir v. Plymouth Borough, 148 Pa. 566, that the declarations of a street commissioner, made while engaged in doing the work, were a part of the res gestæ; and, in this case, it is not questioned that the immediate cause of the injury was the erection of the barrier or path across Fifth street, which diverted the water naturally flowing along the line of the road as well as in the ditch prepared by former supervisors, upon the plaintiff's property; and for this act, as determined

by the verdict, the city would be responsible in damages.   See also Bohan v. Avoca Borough, 154 Pa. 404.

The important facts alleged by the plaintiff were vigorously controverted by the defendant and the whole question was properly submitted to the jury in a charge that was clear and comprehensive and in which we find no error.   The assignments of error are overruled and the judgment is affirmed.

W. D. PORTER, J., dissents.