## Pisarski v. City of Pittsburgh

*Michael Hahalyak*, for plaintiff.

*J. Frank McKenna*, City Solicitor, and *Louis Dadowski*, Assistant City Solicitor, for defendants.

CERCONE, J., January 30, 1958.—This matter comes before the court en banc on exceptions to the adjudication and the decree nisi of the chancellor in proceedings in equity.

The facts have been agreed upon by the parties, and are set forth accordingly.

The parties have not agreed as to the amount of the damages, if any, that are to be assessed, as will appear in that part of the statement relating to damages.

It is admitted that Chatsworth Street is a city street and that the City of Pittsburgh is charged with its maintenance, including the drainage thereof.

In 1924, plaintiffs purchased a piece of real estate fronting on Irvine Street with its back abutting on Chatsworth Street. The house bears the number 4400 Chatsworth Street. The lot slopes downwardly from Chatsworth Street to Irvine Street and in 1924 a portion of the lot which abuts Chatsworth Street was about two and a half feet below the level of the cartway of Chatsworth Street. Chatsworth Street was and is an unimproved dirt street. At the time plaintiffs purchased their property the cartway of Chatsworth Street on the side abutting plaintiffs' property was considerably lower than the opposite side of the street. The opposite and higher side of the street was and is abutted by a large vacant hillside lot which slopes toward Chatsworth Street. For some distance on each side of plaintiffs' property Chatsworth Street sloped toward a low area on plaintiffs' property. Therefore, in 1924, due to the natural lay of the land, plaintiffs had received water and mud from three directions.

About six months after plaintiffs purchased their property, they built a wall along the edge of their property where it abuts Chatsworth Street. This wall is five feet high measured on the inner side from the level of plaintiffs' lot and rose two and a half feet above the surface of Chatsworth Street.

The purpose and effect of this wall was to prevent mud and water from flowing into plaintiffs' property and to direct it along the base of the street side of the wall to the end of the wall and plaintiffs' property where it was discharged into a city alley which runs downhill from Chatsworth Street toward Irvine Street.

About 1935, the WPA, with the authorization of the city, did some work on this street and made a gutter along the base of plaintiffs' wall to facilitate the drainage to the city alley, as described above.

At various times after 1924, vehicle traffic wore holes in Chatsworth Street, in back of plaintiffs' property. These holes were from one to two feet in length and width, and six to eight inches deep. The City of Pittsburgh, pursuant to its duty to maintain the cartway of Chatsworth Street in proper repair for vehicular traffic, and in response to complaints from the other residents of Chatsworth Street, excluding plaintiffs, spread slag upon Chatsworth Street and filled up the holes to relieve the muddy situation. By 1946, the effect of the slag was not only the filling of the holes but bringing plaintiffs' side of the street up to the level of the opposite side of the street and to eliminate the longitudinal dip in the street in back of plaintiffs' property. During the period before 1946, plaintiffs had extended the original wall along Chatsworth Street and had built another wall at right angles to this wall; however, by 1945, the street surface was level with the top of plaintiffs' wall. After 1945, plaintiffs from time to time, prior to the bringing of this action, made complaints to the City of Pittsburgh about the effect of its treatment of the surface of Chatsworth Street upon their property and requested that the holes be filled without spreading slag over the entire street. After 1946, the spreading of the slag raised the street level to about one foot above plaintiffs'

wall and they began to receive water from the street onto their property. Despite the protests of plaintiffs the city continued to spread slag upon the street about twice a year so that about 1955, the street level was approximately three feet above the top of plaintiffs' wall. In the year 1953, the city placed tar lumps on the entire street surface making vehicular and personal access to plaintiffs' driveway difficult. The city did not pave the street nor continue the gutters along the edge of the street.

After 1945, the following conditions existed:

Two or three times a year, after heavy rains, water would accumulate in plaintiffs' cellar to a depth of about six inches. It would require about one day for this water to disappear. This water washed the mortar from between the studs of plaintiffs' foundation wall and necessitated a repair of the wall. The water also damaged two hot water heaters belonging to plaintiffs and required them to replace a set of wooden steps. In addition to this damage the water washed the topsoil from a portion of plaintiffs' lot which was used for the growing of flowers and vegetables. Plaintiffs further testified that their property has depreciated since 1945 to the extent of $4,000 because of the injuries stated above and because the material placed on the street has made access to their property, by vehicle and on foot, more difficult. Defendant does not admit the extent of depreciation nor that the so-called "before and after" rule is applicable in this case, but it avers that the injuries are reparable and the measure of damages is the cost of the repairs. The parties have reached no agreement as to the cost of the repairs.

This is an action to enjoin defendant city from committing acts of continuing trespass against the land of plaintiffs by reason of its negligent work on a street abutting the rear of plaintiffs' property, which negli-

gent acts caused the flow of water into plaintiffs' house, causing damage to the structure and fixtures located therein, and loss of rentals.

Since equity has properly assumed jurisdiction over the controversy in this matter, the chancellor properly determined other issues in the case, even though they might not have been originally subject to equity jurisdiction: Bowman v. Gum, 327 Pa. 403, 193 A. 2d 271; Hayden v. Hayden, 354 Pa. 11, 46 A. 2d 502; Massachusetts Bonding & Insurance Company v. Johnston & Harder, Inc., 330 Pa. 336; Wortex Mills, Inc., v. Textile Workers Union of America, 380 Pa. 3; Tri-Cities Water Company v. Monessen, 313 Pa. 83, 85.

Plaintiffs are in need of relief from the action of the city which caused Chatsworth Street to be slowly, steadily and increasingly heightened in elevation by indiscriminate application of slag and road material over a long period of time until it no longer resembled anything like the original street insofar as elevation is concerned. This is not a case of change in the character of the street, as defendant city argues, but rather one of change of elevation of a street, in which the evidence shows that employes of defendant city street department heaped and piled slag and other road materials on the street to such a degree and quantity as to raise the street some six feet from its original level. There was no evidence in the case that the work was authorized by city council as an improvement, in which event plaintiffs might also have considered recourse before the board of viewers in the absence of negligence on the part of the city. Here, however, the work of the employes of the street department was a series of indiscriminate, haphazard piling and heaping of road material, without regard to the original line of elevation, and far beyond any need for road repair or maintenance.

If the city had kept the work within the limits necessary for proper repair and maintenance of the street, the gutter constructed by the WPA need not have been destroyed and obliterated, and the drainage from plaintiffs' property removed. With proper work the street would have remained at its original level, and the slag and road material would have been used merely to fill depressions and holes in the street, and not to build up the street until it constituted a condition not within the contemplation of the city authorities and performed outside of the scope of work that could be considered a public improvement.

The city was perhaps under no duty to construct the gutters built in 1935, but once they were constructed the city had a duty to properly maintain them. This it not only failed to do, but went further and effectuated the complete destruction of the gutters and deprived plaintiff owners of drainage of waters.

In the case of Loss v. Avalon Borough, 276 Pa. 207, plaintiff was permitted to recover damages against the municipality for failure to maintain an open gutter on an unimproved hillside street on which plaintiff's property abutted. The discharge of surface water from the defective gutter caused the water to flow through the cracks of the gutter into the ground resulting in a slide. The somewhat analogous facts are stated by the court on page 208 of the opinion:

"Plaintiff owns property fronting on Norwood Avenue, in the Borough of Avalon, Allegheny County, on which there is erected a two and one-half story frame dwelling. Both street and lot are located on a hillside, the lot sloping away from the street on a grade, making a difference of 39 feet between the front and rear lines. Norwood Avenue is unimproved and along the side adjoining plaintiff's property the borough constructed an open tile drain, or gutter, to carry off wa-

ter accumulating on the street. In January or February, 1919, the earth on plaintiff's lot slipped toward the rear end damaging the back wall of her house and carrying away a considerable quantity of soil, together with trees, a chicken house and other personal property located at the rear of the premises. Plaintiff instituted this action for damages against the borough, claiming the sliding *resulted from the municipality's negligence in permitting the drain in front of her property to remain in such defective condition as to permit water to discharge through cracks* and holes into the ground, with the result that the clay and shale rock, of which the land was composed, became slippery, ending in the slide and causing the damage claimed in this action." (Italics supplied.)

Damage resulting from the discharge of surface water into the ground due to a defective open gutter was recoverable because of negligence in maintenance of the gutter, and certainly damages from overflow due to the reckless blockage and destruction of a gutter furnishes an even stronger basis for recovery.

In the case of Lang v. Punxsutawney Borough, 44 Pa. Superior Ct. 171 (1910), the court, in an analogous situation involving a sewer, used the following language on pages 174 and 175 of the opinion:

"As a consequence, if the borough negligently permitted its sewer to become filled with sand, gravel, or other debris, so that it could not accomplish the object for which it was designed, and a citizen is thereby injured, he may recover in an action of trespass."

In the present case the gutter was no longer able "to accomplish the object for which it was designed".

43 C. J. §1906, pp. 1146, 1147: "Negligence of Municipality. The general rule that a municipality is not liable for injuries from surface water due to the construction or improvement of streets under law-

ful authority does not apply where the work is negligently done. And so *a municipal corporation will be liable where injury to property by surface water results from the negligent construction of drains* or sewers, *or to negligent failure to keep them in repair and free from obstructions.*" (Italics supplied.)

In the case of Ringwalt v. Atglen Borough, 49 Pa. Superior Ct. 517 (1912), the court stated that although a borough is not bound to provide sewerage for the natural flow of the surface water, it is liable in trespass if a sewerage plan is adopted and through negligence it is not maintained or kept in repair after it is completed.

In the case of Winghardt v. City of Pittsburgh, 86 Pitts. L. J. 193, this court held the city liable to an abutting property owner for negligently filling in a drain or ditch on the street. The situation involved in this case is closely similar to the instant case. The facts and the law are given by the court as follows:

"In February of 1928, Mary Winghardt, deceased, was the owner of a house and lot which abutted on Sunset avenue in the City of Pittsburgh. Sunset avenue runs generally in a northerly and southerly direction. The Winghardt property abutted on the westerly side of the street and was several feet below the then level of the street. The grade of the street had not at that time been established by ordinance. The abutting property on the easterly side of Sunset avenue was considerably above the level of the street, and the surface water therefrom drained into a ditch or drain on the easterly side of the street and flowed past the Winghardt property in a southerly direction.

"It is claimed that when the city of Pittsburgh made a fill on Sunset avenue, which was then an unimproved dirt street, in February of 1928, and again in April, 1929, the fill was so negligently placed as to

stop up the drain on the easterly side of the street thereby causing that part of the fill which had been placed in front of the Winghardt property to slide or move for a distance of from eight to ten feet, as a result of which the Winghardt house was damaged . . .

"The evidence warranted the jury in finding that the damage to plaintiff's property would not have been caused if it had not been for the negligence of the city in filling in the drain on the easterly side of the street. In our opinion this case is ruled by the line of cases which hold that a municipal corporation which diverts the natural flow of surface water is liable to an abutting owner in damages for the resulting injury. See Rohrar v. Harrisburg, 20 Pa. Superior Ct. 543, Tory v. Scranton, 133 Pa. 173; Meninchino v. City of New Castle, 96 Pa. Superior Ct. 405. The motion for judgment n. o. v. will be refused."

And finally, even if the city gutter had not been in existence, it would appear that by reason of the city's elevation of the street the city was under a duty to take measures for proper drainage, because the drainage problem came into being by reason of the affirmative act of elevation. This position is taken by the authors in 9 R. C. L., pp. 660, 661:

"Duty to construct.—It may be stated as a general rule that a municipal corporation is not bound to construct sewers, and that in the absence of a mandatory statute the *corporation is not liable in damages for wholly failing to provide sewerage or drainage, unless they are made necessary by its own act, as where through change of street grades water is cast upon private property, thus causing injury which could be prevented by proper sewerage.*" (Italics supplied).

While a city has absolute power over its streets, its control of them must be exercised with due regard to the rights of abutting property owners. The gutter,

regardless of its depth and width, was a recognized engineering project constructed by the government for the purpose of draining off waters away from plaintiffs' property. It had the weight of long continued sanction of the city, and when it was destroyed by the filling in with slag and road material, with no consideration or steps taken to preserve its use or function, the city must be considered negligent in its street maintenance operations.

Since the damage sustained by plaintiffs was the direct result of the acts of negligence of the city, it shall be held responsible for the damages to the extent of $3,279, and be further enjoined from placing slag and road material on Chatsworth Street abutting plaintiffs' property, unless it is done in conformity with the established elevation of Chatsworth Street.

In the light of the foregoing discussion, defendant's exception no. 1 to the chancellor's finding of fact that the city was negligent, defendant's exceptions nos. 2, 3, 4 and 5 to the chancellor's second, third, fourth and fifth conclusions of law and exception no 6 to the decree nisi, are dismissed.

### Final Decree

And now, January 30, 1958, it is ordered, adjudged and decreed as follows:

1. Plaintiffs are entitled to damages in the sum of $3,279, and it is ordered that judgment be entered against defendant for said amount.

2. Defendant is enjoined from further placing slag and road materials on Chatsworth Street, abutting plaintiffs' property, unless it is done in conformity with the established elevation of Chatsworth Street.

3. Costs to be paid by defendant.

Eo die, exception noted to defendant and bill sealed.